**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| GENETICS INSTITUTE, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>NOVARTIS VACCINES AND<br>DIAGNOSTICS, INC.,<br><br>        Defendant. | Civil Action No.  1:08-cv-0290-SLR |

**DEFENDANT NOVARTIS VACCINES AND DIAGNOSTICS, INC.'S
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION
TO DISMISS PLAINTIFF GENETICS INSTITUTE, LLC'S COMPLAINT FOR LACK
OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE,
<u>MOTION TO TRANSFER UNDER 28 U.S.C. § 1404</u>**

August 12, 2008

                                            Richard K. Herrmann (I.D. #405)
                                            Mary B. Matterer (I.D. #2696)
                                            Amy Arnott Quinlan (I.D. #3201)
                                            Morris James LLP
                                            500 Delaware Avenue, Suite 1500
                                            Wilmington, DE  19801-1494
                                            (302) 888-6800
                                            rherrmann@morrisjames.com
                                            mmatterer@morrisjames.com
                                            aquinlan@morrisjames.com

                                            George A. Riley (pro hac vice)
                                            John C. Kappos (pro hac vice)
                                            George C. Yu (pro hac vice)
                                            O'Melveny & Myers LLP
                                            275 Battery Street, Suite 2600
                                            San Francisco, CA  94111-3305
                                            (415) 984-8700
                                            griley@OMM.com
                                            jkappos@OMM.com
                                            gyu@OMM.com

                                            *Attorneys for Defendant*
                                            *Novartis Vaccines and Diagnostics, Inc.*

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................................. 1

II. GI LACKS STANDING TO BRING A SECTION 291 ACTION BASED ON
   THE '112 PATENT ................................................................................................................ 1

   A. GI Does Not Own The '112 Patent ........................................................................... 1

   B. In The Event Wyeth Subsequently Transferred Ownership Of The '112
      Patent Back To GI, Novartis Will Request Transfer To The Eastern
      District of Texas ........................................................................................................ 3

III. FOR PURPOSES OF A SECTION 291 ACTION, THE '112 PATENT HAS
    EXPIRED ............................................................................................................................... 4

   A. The Court Loses Jurisdiction Over A Section 291 Action When One Of
      The Allegedly Interfering Patent Claims Is Disclaimed Or Expires ......................... 5

   B. The '112 Patent Has Expired For Purposes Of A § 291 Action ................................ 6

   C. No Interference Exists Because The Law Requires Interfering Claims ................... 9

IV. CONCLUSION ..................................................................................................................... 10

## TABLE OF AUTHORITIES

Page

**CASES**

*Albert v. Kevex Corp.*,
    729 F.2d 757 (Fed. Cir. 1984) ................................................................................ 4, 5, 6, 10

*Alberta Telecomm. Research Centre v. Rambus, Inc.*,
    06-2595, 2006 WL 3041075 (N.D. Cal. Oct. 24, 2006) ...................................................... 6

*Eli Lilly & Co. v. Medtronic Inc.*,
    496 U.S. 661 (1990) ............................................................................................................. 6

*Engler v. General Elec. Co.*,
    144 F.2d 191 (2d Cir. 1944) ................................................................................................. 6

*Hyatt v. Dudas,*
    492 F.2d 1365 (Fed. Cir. 2007) ............................................................................................ 8

*In re Intel Corp. Microprocessor Antitrust Litig.*,
    452 F. Supp. 2d 555 (D. Del. 2006) ..................................................................................... 2

*JJK Indus. v. Kplus, Inc.*,
    447 F. Supp. 2d 713 (S.D. Tex. 2006) ............................................................................... 10

*Jones v. Hardy,*
    727 F.2d 1524 (Fed. Cir. 1984) .......................................................................................... 10

*Kimberly-Clark Corp. v. Proctor & Gamble Distr. Co., Inc.,*
    973 F.2d 911 (Fed. Cir. 1992) .......................................................................................... 1, 3

*Medichem v. Rolabo*,
    437 F.3d 1157 (Fed. Cir. 2006) .......................................................................................... 10

*Merck & Co., Inc. v. Kessler*,
    80 F.3d 1543 (Fed. Cir. 1996) .............................................................................................. 7

*Pfizer Inc. v. Dr. Reddy's Labs., Ltd.*,
    359 F.3d 1361 (Fed. Cir. 2004) ........................................................................................ 7, 8

**STATUTES**

28 U.S.C. § 1404 ............................................................................................................... 1, 4, 10

35 U.S.C. § 135 ............................................................................................................................ 9

35 U.S.C. § 146 ............................................................................................................................ 2

35 U.S.C. § 154 ............................................................................................................................ 7

35 U.S.C. § 156 ................................................................................................................... passim

35 U.S.C. § 291 ................................................................................................................... passim

# TABLE OF AUTHORITIES
(continued)

**Page**

**RULES AND REGULATIONS**

Federal Rule of Civil Procedure 12(b)(1) ....................................................................................... 1

37 C.F.R. § 1.602(c)......................................................................................................................... 3

37 C.F.R. § 41.203 ...................................................................................................................... 7, 9

**OTHER AUTHORITIES**

Manual of Patent Examining Procedure (Eighth Ed., Rev. 6) (MPEP) § 2750........................... 8, 9

I.  **INTRODUCTION**

In February 2008, Defendant Novartis Vaccines and Diagnostics, Inc. ("Novartis") filed a complaint in the United States District Court for the Eastern District of Texas alleging infringement by Wyeth and Wyeth Pharmaceuticals, Inc. of two Novartis patents (the "Novartis patents") for, *inter alia*, making and selling ReFacto®.  Subsequently, in the present interfering patent action under 35 U.S.C. § 291, Plaintiff Genetics Institute, LLC ("GI") – a wholly-owned subsidiary of Wyeth – alleges that its U.S. Patent No. 4,868,112 (the "'112 patent") interferes with the Novartis patents and seeks a determination of the priority of invention.  Novartis now moves to dismiss GI's complaint for lack of subject matter jurisdiction on two separate grounds.  Fed. R. Civ. P. 12(b)(1).  First, GI lacks standing to bring an action under 35 U.S.C. § 291 because it is not the owner of all right, title, and interest in the '112 patent.  Second, the '112 patent has expired but for a "patent term extension" under 35 U.S.C. § 156.  Section 156 extends only limited rights that do not provide a basis for an interfering patents action under § 291.  For each of these two independent reasons, the Court should dismiss GI's complaint for lack of subject matter jurisdiction.  Alternatively, if discovery establishes that Wyeth is the real party in interest, Novartis alternatively moves to transfer this action to the Eastern District of Texas under 28 U.S.C. § 1404.[1]

II.  **GI LACKS STANDING TO BRING A SECTION 291 ACTION BASED ON THE '112 PATENT**

   A.  **GI Does Not Own The '112 Patent.**

Only the owner of an allegedly interfering patent has standing to bring an interfering patents action under § 291.  *See* 35 U.S.C. § 291 ("The *owner* of an interfering patent may have recourse against the owner of another by civil action.") (emphasis added); *Kimberly-Clark Corp. v. Proctor & Gamble Distr. Co., Inc.,* 973 F.2d 911, 914 (Fed. Cir. 1992) ("Section 291 provides a means for resolving the contested issue of priority of invention solely *between two patent owners,* without involving third parties.") (emphasis added).  But GI has admitted in another litigation in this Court that Wyeth – not GI – is the sole owner of the '112 patent and that GI

---

[1] Novartis is satisfied to resolve the motion to transfer after discovery on the issue of ownership is completed. Novartis raises this issue now to avoid a claim of waiver for failure to file the motion to transfer under 12(h).

- 1 -

holds no right, title or interest in that patent. Accordingly, GI's complaint should be dismissed for lack of standing under § 291.

In *Genentech, Inc. v. Wyeth*, 03-cv-1160-GMS (D. Del.), plaintiffs Genentech and Bayer HealthCare LLC filed an action against Wyeth and GI seeking judicial review of a U.S. Patent and Trademark Office ("PTO") interference decision regarding the '112 patent under 35 U.S.C. § 146. (Yu Decl., Ex. 1, Complaint in *Genentech, Inc. v. Wyeth*, 03-cv-1160-GMS (D. Del.).)[2] The plaintiffs alleged that Wyeth, not GI, was the sole owner of the '112 patent. (Yu Decl., Ex. 1, ¶ 6.) In their answer, Wyeth and GI admitted that "Wyeth is the real party in interest and owner of all right, title, and interest in the '112 patent." (Yu Decl., Ex. 2, ¶ 6, Defendants' First Amended Answer.) Wyeth and GI further admitted that "neither Toole [the named inventor of the '112 patent] nor GI presently has any right, title, or interest in or to the '112 patent." (*See* Yu Decl., Ex. 1, ¶ 8 (alleging in third sentence that neither Toole nor GI has any right, title, or interest in or to the '112 patent); Ex. 2, ¶ 8 (admitting allegations contained in first four sentences of paragraph 8 of complaint).) These admissions directly contradict GI's allegation in the Complaint before this Court that GI owns the '112 patent. (D.I. 1, ¶ 1.) Following their conclusive admissions that Wyeth was the sole owner of the '112 patent, neither Wyeth nor GI filed any paper in the *Genentech v. Wyeth* litigation indicating that the ownership of that patent had changed. That litigation closed on October 13, 2005. (Yu Decl., Ex. 3, Docket Summary for Genentech, Inc. v. Wyeth, 03-cv-1160-GMS (D. Del.).)

Based on direct admissions by the defendants in the *Genentech v. Wyeth* suit, Wyeth is the sole owner of all interest in the '112 patent. As explained in a statement of ownership interest submitted to the Board of Patent Appeals and Interferences, GI transferred *all its assets*, including the '112 patent, to American Home Products, which later changed its name to Wyeth:

---

[2] "In reviewing a factual challenge to the Court's subject matter jurisdiction, the Court is not confined to the allegations of the complaint, and the presumption of truthfulness does not attach to the allegations in the plaintiff's complaint. Instead, the Court may consider evidence outside the pleadings, including affidavits, depositions and testimony, to resolve any factual issues bearing on jurisdiction." *In re Intel Corp. Microprocessor Antitrust Litig.*, 452 F. Supp. 2d 555, 558 (D. Del. 2006) (citation omitted).


> In 1996, GI was purchased by American Home Products ("AHP") but GI still existed as a wholly owned subsidiary of AHP. Later, all of the assets of GI were transferred to AHP, and on March 11, 2002, AHP changed its name to Wyeth. Thus, Wyeth is now the real party in interest and owner of all right, title and interest in U.S. Patent No. 4,868,112.

(*See* Yu Decl., Ex. 4, Statement Under 37 C.F.R. § 1.602(c).) Wyeth apparently failed to record this transfer of ownership with the PTO, even though GI provided notice of this change in ownership during the interference involving the '112 patent.

Although there was no dispute in *Genentech v. Wyeth* that Wyeth was the sole owner and real party in interest with respect to the '112 patent, plaintiffs Genentech and Bayer Healthcare named GI as a co-defendant because the PTO assignment database indicated (incorrectly) that GI was still the assignee of the patent. (*See* Yu Decl., Ex. 1, ¶ 8.) In reality, as shown above, GI transferred all its assets, including the '112 patent, to Wyeth (then known as American Home Products) following Wyeth's 1996 acquisition of GI. Accordingly, because GI has no ownership interest in the '112 patent, GI's complaint should be dismissed for lack of standing. *See Kimberly-Clark*, 973 F.2d at 914.

### B. In The Event Wyeth Subsequently Transferred Ownership Of The '112 Patent Back To GI, Novartis Will Request Transfer To The Eastern District of Texas.

It is possible that Wyeth may have transferred ownership of the '112 patent back to GI between the conclusion of *Genentech v. Wyeth* and the present litigation. Even if Wyeth and GI effected such a transfer (and again failed to record such transfer with the PTO), it is indisputable that Wyeth, as the owner of all interest in GI and the party to which all of GI's assets were transferred, is the real party in interest for this litigation. Wyeth appears to have chosen GI as the named plaintiff here simply to avoid the appearance of the parties being the same in this Court as in a litigation pending in the Eastern District of Texas involving the two Novartis patents-in-suit, U.S. Patent Nos. 6,060,447 (the "'447 patent") and 6,228,620 (the "'620 patent"). On May 5, 2008, Novartis served on Wyeth a complaint filed February 15, 2008 in the District Court for the Eastern District of Texas, asserting that Wyeth infringed the claims of the '447 and '620 patents. (*See* D.I. 1, ¶ 6.) Eleven days later, in an effort to undermine first-filer Novartis's chosen venue

for resolving this dispute, Wyeth's wholly owned subsidiary, GI, commenced this action seeking an interference with the '447 and '620 patents.

On August 1, 2008, Wyeth and Wyeth Pharmaceuticals, Inc. answered Novartis's complaint without disputing jurisdiction or venue. (See Yu Decl., Ex. 5, ¶ 6, Wyeth's Answer.) As such, Wyeth has waived objections to both jurisdiction and venue in the Eastern District of Texas. Consequently, unless this case is dismissed or transferred, there will be a duplication of judicial efforts as two courts hear evidence on the priority of invention issue. In addition, there is a significant risk of inconsistent judgments between the two cases.

If in response to this motion, GI contends that ownership of the '112 patent was reassigned back to GI, Novartis will request discovery regarding the circumstances and timing of said reassignment. Novartis believes discovery will show that Wyeth is the real party in interest in this litigation and that any assignment to GI was intended only to avoid application of the first-to-file rule to transfer this case to the Texas court where the dispute between Wyeth and Novartis is pending. If our discovery proves right, Novartis alternatively moves to transfer this action to the Eastern District of Texas under 28 U.S.C. § 1404 on the grounds that this action involves the same real parties in interest, both patents at issue in Texas, and many of the same issues as the related case pending there. Novartis would also seek such a transfer in the event GI attempts to remedy its lack of standing by amending its complaint to add Wyeth as a plaintiff. In either circumstance, transfer would be appropriate for reasons of judicial economy and to avoid the risk of inconsistent judgments regarding the patents at issue.

### III.     FOR PURPOSES OF A SECTION 291 ACTION, THE '112 PATENT HAS EXPIRED

In addition, the Court lacks subject matter jurisdiction over this action – regardless of who owns the '112 patent – because the term of the '112 patent has expired. Once an allegedly interfering patent expires, jurisdiction for a § 291 action is destroyed. *See Albert v. Kevex Corp.*, 729 F.2d 757, 760 (Fed. Cir. 1984). The '112 patent issued September 19, 1989, and originally would have expired September 19, 2006, based on a 17-year statutory term. (D.I. 1, Ex. B.) However, the PTO granted GI a "patent term extension" under 35 U.S.C. § 156 for pre-market

regulatory review of Wyeth Pharmaceutical's drug, ReFacto®. The § 156 extension confers a limited right to exclude a generic drug manufacturer from marketing ReFacto® but is not effective for other purposes, including forming the basis of a § 291 action. Because the '112 patent has expired for all purposes other than the right to exclude others from marketing ReFacto®, the Court should dismiss this action.

### A.  The Court Loses Jurisdiction Over A Section 291 Action When One Of The Allegedly Interfering Patent Claims Is Disclaimed Or Expires.

In a § 291 action, the existence of interfering claims is a jurisdictional prerequisite. In the leading Federal Circuit decision regarding subject matter jurisdiction for a § 291 action, the owner of one of the interfering patents, Defendant Kevex, filed a disclaimer of the allegedly interfering claims in an effort to destroy subject matter jurisdiction. *See Kevex*, 729 F.2d.at 760. Although the trial judge ruled that "Count 3: interfering patents was mooted" by Kevex's cancellation of claims, the court then entered a determination on summary judgment regarding invalidity of Kevex's patent by reason of the on-sale bar. *Id*.

In its appeal, Kevex argued the district court was required to ascertain whether the patents interfered before determining validity of either patent. Plaintiff Albert argued that § 291 allowed a court to "adjudge the question of validity of any of the interfering patents, in whole or in part," regardless of whether it has determined the patents interfere. *Id*. Judge Rich of the Federal Circuit rejected Albert's argument that the existence of interfering patents was not a jurisdictional requirement, vacated summary judgment of invalidity, and remanded with instructions to dismiss for lack of jurisdiction:

> Under any construction of § 291, it is impossible to conceive how it could be any clearer that interference between patents is a sine qua non of an action under § 291. Absent interference, a court has no power under § 291 to adjudicate the validity of any patent. We hold that the court has no jurisdiction under § 291 unless interference is established.

*Id.* at 760-761. Judge Rich also noted that § 291 "is not a basis for a nullity action, it is solely the basis for an action to eliminate interference between patents." *Id.* at 761. Accordingly, the

Federal Circuit remanded the case to the district court with instructions to dismiss for lack of subject matter jurisdiction.

Just as jurisdiction was destroyed by disclaiming interfering subject matter in *Kevex*, jurisdiction for a § 291 action is destroyed by the expiration of one of the allegedly interfering patents. In reviewing a case brought under § 66, the forerunner of § 291, the Second Circuit held, "the owner of an expired patent cannot maintain such a suit since the claims of an expired patent are no longer of any force or effect and cannot be [in] interference with those of any other patent." *Engler v. General Elec. Co.*, 144 F.2d 191, 195 (2d Cir. 1944). A recent decision from the Northern District of California applied the reasoning of *Kevex* and *Engler* to likewise find the court had no jurisdiction over a § 291 action involving an expired patent. *See Alberta Telecomm. Research Centre v. Rambus, Inc.*, 06-2595, 2006 WL 3041075 at *3 (N.D. Cal. Oct. 24, 2006) ("[A]n expired patent cannot form the basis of an interference under § 291.") (attached as Yu Decl., Ex. 6). These decisions are clear that the claims of the allegedly interfering patents must be in force to maintain a § 291 action.

**B.     The '112 Patent Has Expired For Purposes Of A § 291 Action.**

The sole basis for GI to assert that the '112 patent is still in force is the extended exclusivity GI received based on ReFacto® because otherwise the term of the '112 patent expired in 2006. Extensions under § 156 are available for patented products that are subject to regulatory review by the FDA. Congress intended § 156 extensions for the narrow purpose of restoring exclusivity to a patent owner who lost a portion of its patent term during the FDA approval process. *Eli Lilly & Co. v. Medtronic Inc.*, 496 U.S. 661, 669-70 (1990). By contrast, the FDA approval process did not deprive GI or Wyeth of its ability to file a § 291 action during the 17-year statutory term of the '112 patent. Therefore, there is no rationale and no authority for allowing a § 291 action during the period of extended exclusivity under § 156.

Moreover, the Patent Act, the Federal Courts, and the PTO all agree that the rights granted under § 156 only extend exclusive rights as to "any use approved for the product." Congress intended the § 156 extension to restore exclusivity lost during the FDA approval

- 6 -

process for a particular product's use. The lost patent term only applied to the product under FDA review covered by the claims, not for the entire scope of claims. And because existence of an interference requires that the *claims* of two patents contain the same or substantially the same subject matter, *see* 37 C.F.R. § 41.203 (an assertion that is not affected by the FDA process), the extension of limited rights under the '112 patent cannot support an action under § 291.

### 1. The Plain Language Of Section 156 Limits The Scope Of The Extension.

Section 156 provides a limited extension of rights for the patentee. Section 156(b)(1) states, "the rights derived from any patent the term of which is extended under this section shall … be limited to any use approved for the product." Section 156(b)(2), which applies to claims covering methods of using approved products, and § 156 (b)(3), which applies to claims covering methods of manufacturing approved products, also contain language limiting the extended rights, respectively, to any use approved for the product and to the method of manufacture used to make the approved product. The language of § 156 does not provide a broad extension of the claim as a whole. The plain language of § 156 indicates that the extension is for a limited purpose relating to uses approved for the product that underwent FDA review and is not intended to support a claim of interfering patents.

### 2. The Federal Circuit Interpreted Section 156 As Extending Rights Limited To Approved Uses For The Product.

The Federal Circuit has read § 156(b)(1) as limiting the scope of the extension. *Merck & Co., Inc. v. Kessler*, 80 F.3d 1543 (Fed. Cir. 1996), involved a challenge to the PTO and FDA's interpretation of § 156 in light of the change to patent terms that resulted from the Uruguay Round Agreements Act (35 U.S.C. § 154). In describing various limitations to § 156, the *Merck* court stated "the restoration period of the patent does not extend to all products protected by the patent but only to the product on which the extension was based." *Id.* at 1547 (analyzing § 156(b)(1)).

The Federal Circuit further recognized differences between the scope of a patent's claims and the more limited rights extended under § 156 in *Pfizer Inc. v. Dr. Reddy's Labs., Ltd.*, 359

F.3d 1361 (Fed. Cir. 2004). In that case, the court applied statutory language defining the product protected by the extended term to include the drug's active ingredient and "any salt or ester of the active ingredient." *Id.* at 1366 (quoting 35 U.S.C. § 156 (f)). In so doing, the court noted the scope of the claims at issue, which generically covered pharmaceutical and non-pharmaceutical uses of the drug amlodipine, were more broad than the extended rights under § 156. The court stated, "[t]he 'rights derived' provision of § 156(b) specifically limits the extension to 'any use approved for the product,' which means that other, *e.g.*, non-pharmaceutical uses, are not subject to the extension." *Id.* Thus, consistent with the plain meaning of the statute, the Federal Circuit has stated that the rights conferred by an extension under § 156 are not coextensive with the claims of the patent.

### 3. The PTO Interpreted Section 156 To Require Patent Rights To Expire With The Original Expiration Date For All Rights Other Than The Use Approved For The Product.

In its Manual of Patent Examining Procedure ("MPEP"), the PTO explained the purpose of § 156 and describes the limited nature of the extension that statute provides.[3] First, the MPEP provides some of the history behind the enactment of § 156 as part of an overall plan to address distortions to the patent term caused by the FDA review process:

> The right to a patent term extension based upon regulatory review is the result of the Drug Price Competition and Patent Term Restoration Act of 1984, Pub. L. No. 98-417, 98 Stat. 1585 (codified at 21 U.S.C. 355(b), (j), (l); 35 U.S.C. 156, 271, 282) (Hatch-Waxman Act). The act sought to eliminate two distortions to the normal "patent term produced by the requirement that certain products must receive premarket regulatory approval." *Eli Lilly & Co. v. Medtronic Inc.*, 496 U.S. 661, 669, 15 USPQ2d 1121, 1126 (1990). The first distortion was that the patent owner loses patent term during the early years of the patent because the product cannot be commercially marketed without approval from a regulatory agency. The second distortion occurred after the end of the patent term because competitors could not immediately enter the market upon expiration of the patent because they were not allowed to begin testing and other activities necessary to receive FDA approval before patent expiration.

---

[3] Although the MPEP "does not have the force of law," … the MPEP "is made available to the public and ... describe[s] procedures on which the public can rely." *Hyatt v. Dudas,* 492 F.2d 1365, 1369 n.2 (Fed. Cir. 2007) (internal citations omitted).

(Yu Decl., Ex. 7, MPEP § 2750.)  Next, the PTO explained how a limited patent term extension under § 156 addressed the distortions described above:

> The part of the act codified as 35 U.S.C. 156 was designed to create new incentives for research and development of certain products subject to premarket government approval by a regulatory agency.  The statute enables the owners of patents on certain human drugs, food or color additives, medical devices, animal drugs, and veterinary biological products to restore to the terms of those patents some of the time lost while awaiting premarket government approval from a regulatory agency.  *The rights derived from extension of the patent term are limited to the approved product (as defined in 35 U.S.C. 156(a)(4) and (a)(5)).  See 35 U.S.C. 156(b).  Accordingly, if the patent claims other products in addition to the approved product, the exclusive patent rights to the additional products expire with the original expiration date of the patent.*

*Id.* (emphasis added).  Thus, the MPEP, consistent with the plain language of the statute and the case law from the Federal Circuit, indicates that the extension to the patent term under § 156 *only* applies to uses approved by the FDA for the product.

The distortion to patent term only affected the ability to protect a patented product, not to challenge an allegedly interfering patent.  GI (or Wyeth) has already enjoyed its statutory 17-year patent term to commence an interfering patents litigation under § 291.  Accordingly, GI's extension for the '112 patent is limited to "the human biologic product ReFacto® and a method of making ReFacto®."  (Yu Decl., Ex. 8, Notice of Final Determination.)  The exclusive rights defined by the language of the '112 patent *claims* expired with the original expiration date, September 19, 2006, and cannot thereafter form the basis of a § 291 action.

### C.     No Interference Exists Because The Law Requires Interfering Claims.

The extension of limited exclusivity rights relating to ReFacto® does not support an interfering patents suit under § 291 because the existence of an interference requires the two purportedly interfering patents contain *claims* that describe substantially the same subject matter.  In particular, no interference exists unless "the subject matter of a *claim* of one party would, if prior art, have anticipated or rendered obvious the subject matter of a *claim* of the opposing party and vice versa."  *See* 37 CFR 41.203 (emphasis added).  The same standard applies to PTO interference actions under 35 U.S.C. § 135 and to district court interference actions under 35

U.S.C. § 291. *See Medichem v. Rolabo*, 437 F.3d 1157, 1161 (Fed. Cir. 2006) ("[T]he first step in an interference analysis is for the court to determine whether an interference exists under 35 U.S.C. § 291 by asking whether the 'patents … have the same or substantially the same subject matter in similar form as that required by the PTO pursuant to 35 USC § 135.'"); *JJK Indus. v. Kplus, Inc.*, 447 F. Supp. 2d 713, 724 (S.D. Tex. 2006) ("[I]nterfering patents are patents that claim the same subject matter, and *it is thus correct, and necessary, to compare claims*, not disclosures, when comparing issued patents under section 291.") (emphasis added). One must compare the claims of allegedly interfering patents because section 291 actions exist to determine priority of invention, and "each claim must be considered as defining a separate invention." *Jones v. Hardy*, 727 F.2d 1524, 1528 (Fed. Cir. 1984).

As stated in *Kevex*, "Two or more patents 'interfere' – a term of art in patent law – when *they claim the same subject matter*." *Kevex*, 729 F.2d at 758 n.1 (emphasis added). Thus, an interfering patents suit requires claims that interfere. Because the extension under § 156 provides exclusivity only for approved uses of a particular product, not for the now-expired *claims* of the '112 patent, no interference can exist between the '112 patent and the Novartis patents.

## IV.   CONCLUSION

There are two independent bases for the Court to dismiss GI's complaint. First, GI lacks standing to bring this action as it has admitted that Wyeth is the owner of the '112 patent. Second, because the term of the '112 patent has been extended only for the purpose of excluding others from making and selling ReFacto® for uses approved by the FDA, the '112 patent has expired and cannot provide jurisdiction for a § 291 action. Based on the foregoing, Novartis respectfully requests that the Court dismiss this action. Alternatively, if discovery establishes that Wyeth is the real party in interest, Novartis moves to transfer this action to the Eastern District of Texas under 28 U.S.C. § 1404.

| | |
|---|---|
| August 12, 2008 |    */s/ Richard K. Herrmann*      <br>Richard K. Herrmann (I.D. #405)<br>Mary B. Matterer (I.D. #2696)<br>Amy Arnott Quinlan (I.D. #3201)<br>Morris James LLP<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801-1494<br>(302) 888-6800<br>rherrmann@morrisjames.com<br>mmatterer@morrisjames.com<br>aquinlan@morrisjames.com<br><br>George A. Riley (pro hac vice)<br>John C. Kappos (pro hac vice)<br>George C. Yu (pro hac vice)<br>O'Melveny & Myers LLP<br>275 Battery Street, Suite 2600<br>San Francisco, CA 94111-3305<br>(415) 984-8700<br>griley@OMM.com<br>jkappos@OMM.com<br>gyu@OMM.com<br><br>*Attorneys for Defendant*<br>*Novartis Vaccines and Diagnostics, Inc.* |

- 11 -