## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GENETICS INSTITUTE, LLC,
a Delaware limited liability company,

      Plaintiff,

    v.

NOVARTIS VACCINES AND
DIAGNOSTICS, INC.,
a Delaware corporation,

      Defendant.

Civil Action No.  1:08-cv-0290-SLR

---

**DECLARATION OF GEORGE C. YU IN SUPPORT OF DEFENDANT
NOVARTIS VACCINES AND DIAGNOSTICS, INC.'S
MOTION TO DISMISS PLAINTIFF GENETICS INSTITUTE, LLC'S COMPLAINT
FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE,
MOTION TO TRANSFER UNDER 28 U.S.C. § 1404**

I, George C. Yu, do hereby declare:

1.    I am an attorney with the law firm of O'Melveny & Myers and am admitted to practice *pro hac vice* before this Court.  I submit this declaration in support of Defendant Novartis Vaccines and Diagnostics, Inc.'s Motion to Dismiss Plaintiff Genetics Institute, LLC's Complaint for Lack of Subject Matter Jurisdiction, Or, In The Alternative, Motion To Transfer Under 28 U.S.C. § 1404.  The facts set forth in this declaration are known to me personally unless otherwise indicated.  If called as a witness, I could and would testify competently concerning these matters.

2.    Attached as Exhibit 1 to this Declaration is a true and correct copy of the complaint from *Genentech, Inc. v. Wyeth*, 03-1160 (D. Del.), dated December 23, 2003.

3.    Attached as Exhibit 2 to this Declaration is a true and correct copy of the first amended answer from *Genentech, Inc. v. Wyeth*, 03-1160 (D. Del.), dated March 2, 2004.

- 1 -

4.    Attached as Exhibit 3 to this Declaration is a true and correct copy of the docket summary for *Genentech, Inc. v. Wyeth*, 03-1160 (D. Del.) downloaded from the CM/ECF website for the District Court for the District of Delaware on July 15, 2008.

5.    Attached as Exhibit 4 to this Declaration is a true and correct copy of Toole's Statement Under 37 CFR § 1.602(c) for Interference No. 103,215, dated May 1, 2002.

6.    Attached as Exhibit 5 to this Declaration is a true and correct copy of the Answer and Counterclaims of Wyeth and Wyeth Pharmaceuticals, Inc., filed August 1, 2008, in the matter of *Novartis Vaccines and Diagnostics, Inc. v. Wyeth and Wyeth Pharmaceuticals, Inc.*, 2:08-CV-67 (E.D. Tex.).

7.    Attached as Exhibit 6 to this Declaration is a true and correct copy of *Alberta Telecomm. Research Centre v. Rambus, Inc.*, 06-2595, 2006 WL 3041075 (N.D. Cal. Oct. 24, 2006).

8.    Attached as Exhibit 7 to this Declaration is a true and correct copy of an excerpt from the Manual of Patent Examining Procedure, 8th ed. (Rev. 6, Sept. 2007).

9.    Attached as Exhibit 8 to this Declaration is a true and correct copy of a Notice of Final Determination (re 35 U.S.C. § 156 extension for '112 patent), dated August 29, 2006.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated:  August 12, 2008                    By:_____
                                                     George C. Yu

2873239.3

- 2 -

# EXHIBIT 1



### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

GENENTECH, INC. and )
BAYER HEALTHCARE LLC, )
)
Plaintiffs, )
)        C.A. No. _0 3 - 1 1 6 0_
v. )
)
WYETH and )
GENETICS INSTITUTE, LLC, )
)
Defendants. )

### COMPLAINT UNDER 35 U.S.C. § 146

### NATURE OF ACTION

1.      Plaintiffs, dissatisfied with a final decision of the Board of Patent Appeals and Interferences of the United States Patent and Trademark Office (hereinafter "the Board") entered October 31, 2003, in Interference No. 103,215 (hereinafter "the Interference"), seek judicial redress by this action pursuant to 35 U.S.C. § 146, and allege as follows:

### THE PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff Genentech, Inc. is a Delaware Corporation having its principal place of business at 1 DNA Way, South San Francisco, California 44080-4990, and is the owner by assignment of U.S. Patent Application Serial Number 07/584,076, filed September 18, 1990 (hereinafter called "Genentech's '076 Application"), and accorded benefit of U.S. Patent Application Serial Number 06/907,297, filed September 12, 1986, and now abandoned.

3.    Plaintiff Bayer Healthcare LLC (hereinafter "Bayer") is a Limited Liability Company organized and existing under the laws of the State of Delaware with its principal place of business at 4101 Research Commons, 79 TW Alexander Drive, Research Triangle Park, North Carolina 27709.

4.    Bayer is the assignee of the exclusive licensee under Genentech's '076 Application.

5.    Defendant Wyeth is, upon information and belief, a Delaware corporation having its principal place of business at Five Giralda Farms, Madison, New Jersey 07940-0874 and having, as its registered agent for service of process, The Prentice Hall Corporation System, Inc., 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

6.    Upon information and belief (the sources and grounds of which are papers, including a Statement Under 37 C.F.R. § 1.602(c), that Wyeth caused to be filed with the Board in connection with the Interference), Wyeth is the real party in interest and owner of all right, title, and interest in U.S. Patent No. 4,868,112 (hereinafter "the '112 Patent") (Exhibit A hereto).

7.    Defendant Genetics Institute, LLC (hereinafter "G.I.") is a Delaware Limited Liability Company with its principal place of business at 87 Cambridge Park Drive, Cambridge, Massachusetts 02140-2387.    G.I. is a wholly-owned subsidiary of Defendant Wyeth.    G.I. has, as its registered agent for service of process, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

8.    The '112 Patent, entitled "Novel Procoagulant Proteins," was issued on September 19, 1989.    Upon information and belief (the sources and grounds of which are

papers, including a Statement Under 37 C.F.R. § 1.602(c), that Wyeth caused to be filed with the Board in connection with the Interference), one of Wyeth's predecessors in title to the '112 Patent was G.I., which was the employer of the patent's named inventor, John J. Toole, Jr., at the times when his subject work was done.    Although papers in the Interference speak as if G.I. and/or "Toole" (John J. Toole, Jr.) were still a party or parties in interest, upon information and belief neither Toole nor G.I. presently has any right, title, or interest in or to the '112 Patent.  Upon information and belief, at all times including and since the time of the Board's October 31, 2003 final decision complained of herein, all right, title, and interest in the '112 Patent has resided in Wyeth alone. However, while Wyeth has represented that the '112 Patent has been assigned to Wyeth, the most recent written assignment recorded with the PTO shows G.I. as the assignee; hence, G.I. is named as a defendant in this lawsuit.

9.    This civil action arises under the patent laws of the United States, and more specifically, under 35 U.S.C. § 146.  This Court has subject matter jurisdiction of the action based upon that section and based upon 28 U.S.C. §§ 1331 and 1338(a).  This action is timely and proper, in that Genentech has not appealed to the United States Court of Appeals for the Federal Circuit and this action is being filed within sixty (60) days of the Board's October 31, 2003 final decision with which the plaintiffs are dissatisfied.

10.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c).

## THE PATENT INTERFERENCE

11.    The Interference was declared and instituted by the Board on January 5, 1994. The interfering subject matter between the '112 Patent and Genentech's '076 Application was defined by two Counts, reading as follows:

COUNT 1

A recombinant DNA which upon expression results in a truncated factor VIII protein which is an active procoagulant wherein the recombinant DNA encodes for a protein having the amino acid sequence of a human factor VIII:C except for having a deletion corresponding to at least 581 amino acids or at least 807 amino acids within the region between Arg-759 and Ser-1709 wherein the amino acid numbering is with reference to the Met-1 of the human factor VIII:C leader sequence.

COUNT 2

An isolated and purified human factor VIII variant having a deletion of amino acids within the region from residue 741 to residue 1689, inclusive, wherein the amino acid numbering is with reference to Ala-1 of the mature human factor VIII:C sequence.

12.    After proceedings including a final hearing, the Board on October 31, 2003, issued a final decision in the Interference (hereinafter the "Board Decision").

## AS THEIR FIRST CAUSE OF ACTION, PLAINTIFFS ALLEGE AS FOLLOWS:

13.    The allegations of paragraphs 1-12 hereof are hereby realleged as if set forth herein at length.

14.    Plaintiffs are dissatisfied with the Board Decision, which erroneously awarded priority of invention, as to both Counts in the Interference, to Wyeth rather than to Genentech. Plaintiffs complain of, are dissatisfied with, and seek judicial redress of

this error and of all other errors made by the Board in the Interference that adversely affected the interest of Genentech, including but not limited to the following errors:

A.    The Board's error in finding that the "Wood Outline," advanced by Genentech as proof of conception by July 30, 1984, did not suffice to evidence conception, even though Wyeth, before the Board, affirmed under oath and insisted in argument that its similar but almost-three-months-later outline (the "Toole Outline," dated October 20, 1984) sufficed to evidence conception, and the Board's holding that agreement by the parties that conception of the Counts could be established by such written outlines was not binding on the Board;

B.    The Board's error in deciding that the doctrine of "simultaneous conception and reduction to practice" applied in the circumstances of this Interference -- a ruling contrary to both parties' positions as briefed for final hearing;

C.    The Board's error in denying Genentech's motion to suppress the declaration and deposition testimony of Wyeth's designated expert, Dr. Fay;

D.    The Board's error in granting Wyeth's motion to suppress the laboratory notebooks of Genentech researchers Lisa Comstock and Jill Dembroff (*nee* Souder), comprising the Board's errors in (1) finding that the notebooks were hearsay not within any exception, and (2) rejecting the authenticating and corroborating testimony of Ms. Comstock's and Ms. Souder's supervisor, Dr. Cornelia Gorman, based on an erroneous finding that Dr. Gorman was an inventor with respect to the subject matter of the Interference Counts and therefore required corroboration as to her testimony regarding the Comstock and Souder notebooks;

E.     The Board's error in interpreting Count 1 of the Interference to require the actual expression and sequencing of an active protein, even though Count 1 is not drawn to a protein but rather to a "recombinant DNA."

15.     The list of errors set forth in paragraph 14, next above, is illustrative and not exhaustive. Genentech and Bayer intend to raise before this Court all Orders, rulings, and determinations by the Board, and all refusals to consider or decide issues tendered by Genentech, that adversely affected Genentech's interests, including without limitation as to other proper issues, the points referenced in paragraph 14, next above.

16.     In view of errors made by the Board in the Interference, Genentech and Bayer are entitled to judgment in this action correcting the errors therein that were prejudicial to the position of Genentech, based on the record before the Board and any additional evidence that Genentech, Bayer, or any party may introduce in this action.WHEREFORE, Genentech and Bayer demand judgment as follows:

A.     That the Board Decision in the Interference is vacated;

B.     That Genentech is awarded priority as to Count 1 and is entitled to a patent on the claims in Genentech's '076 Application that have been designated as corresponding to Count 1;

C.     That Genentech is awarded priority as to Count 2 and is entitled to a patent on the claims in Genentech's '076 Application that have been designated as corresponding to Count 2;

D.     That Wyeth and G.I. are not entitled to the '112 Patent;

E.     That the United States Patent and Trademark Office ("PTO") is authorized and directed, upon the filing with the PTO of a certified copy of the judgment in this

action, to issue a notice of allowance to Genentech, in accordance with the foregoing, and

thereafter to issue a patent to Genentech upon Genentech's compliance with such issue-

fee-payment requirements and such other usual post-notice-of-allowance requirements as

may then be in force;

     F.     That Costs and attorneys fees be awarded in favor of Genentech and Bayer

against Wyeth and G.I.; and

     G.     That Genentech and Bayer have such other further relief as the Court may

deem appropriate.

Respectfully submitted,

Rudolf E. Hutz (#484)
Jeffrey B. Bove (#998)
Francis DiGiovanni (#3189)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, Delaware 19899
(302) 658-9141

Attorneys for Plaintiffs
Genentech, Inc. and Bayer Healthcare LLC

OF COUNSEL FOR GENENTECH, INC.:

Coe A. Bloomberg
Lois M. Kwasigroch
Jerrold B. Reilly
JONES DAY
555 West Fifth Street
Suite 4600
Los Angeles, CA 90013-1025
(213) 489-3939

Dated:  December 23, 2003

306421_1

# EXHIBIT 2

ORIGINAL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GENENTECH, INC. and )
BAYER HEALTHCARE LLC, )
          )    Civil Action No. 03-1160-GMS
            Plaintiffs, )
          )
            v. )
          )
WYETH and )
GENETICS INSTITUTE, LLC, )
          )
            Defendants.

## FIRST AMENDED ANSWER

1.     Defendants admit that Plaintiffs allege that they are dissatisfied with a final decision of the Board of Patent Appeals and Interferences of the United States Patent and Trademark Office entered October 31, 2003, in Interference No. 103,215, and seek judicial redress by this action pursuant to 35 U.S.C. § 146.

2.     Admitted.

3.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in paragraph 3.

4.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in paragraph 4.

5.     Admitted.

6.     Defendants admit that Wyeth is the real party in interest and owner of all right, title, and interest in the '112 patent.

7.     Admitted.

8.     Defendants admit the averments in the first four sentences of paragraph 8. Defendants admit that Wyeth own the '112 patent, that the most recent written assignment recorded in the PTO shows GI as the assignee, and that GI is named as a defendant in this lawsuit, but otherwise deny the allegations in the last sentence of paragraph 8.

9.     Admitted.

10.     Admitted.

11.     Admitted.

12.     Admitted.

13.     Defendants answer paragraph 13 in the same manner as paragraphs 1-12, above.

14.     Defendants admit that Plaintiffs are dissatisfied with the Board Decision and that they complain of, are dissatisfied with, and seek judicial redress of that decision, but deny the remaining allegations of paragraph 14.

15.     Denied.

16.     Denied.

## AFFIRMATIVE DEFENSES

17.     Should the district court award Genentech priority, claims in Genentech's U.S. Patent Application Serial Number 07/584,076 corresponding to Counts 1 and 2 are unpatentable over the prior art.

Accordingly, Defendants demand judgment:

a)  affirming the Board Decision;

b)  holding that the claims of the '076 Application corresponding to Counts 1 and 2 are unpatentable, and Genentech is thus not entitled to a patent containing those claims;

c)  awarding costs and attorney fees in favor of Defendants against Plaintiffs; and

d)  granting Defendants such further relief as the Court may deem appropriate.

Dated:  March 2, 2004

Respectfully submitted,

**Of Counsel:**

Robert D. Bajefsky, Esq.
Timothy B. Donaldson, Esq.
Gregory A. Chopskie, Esq.
Finnegan Henderson Farabow
  Garrett & Dunner, LLP
1300 I Street, N.W.
Washington, D.C.  20005
(202) 408-4000

Josy W. Ingersoll (#1088)
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801
(302) 571-6672 - phone
*Attorneys for Defendants*
*Wyeth and Genetics Institute, LLC*

WP3:979114.1                                                                 55015.1002

## CERTIFICATE OF SERVICE

I, Josy W. Ingersoll, Esquire hereby certify that copies of the foregoing document were caused to be served on March 2, 2004 upon the following counsel of record:

### BY HAND DELIVERY

Rudolph E. Hutz, Esquire
Jeffrey B. Bove, Esquire
Francis DiGiovanni, Esquire
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
Wilmington, DE 19801

### BY FEDERAL EXPRESS

Coe A. Bloomberg, Esquire
Lois M. Kwasigroch, Esquire
Jerrold B. Reilly, Esquire
Jones Day
555 West Fifth Street, Suite 4600
Los Angeles, CA 90013-1025

Josy W. Ingersoll

WP3:971846.1          55015.1002

# EXHIBIT 3

CLOSED, PATENT

# U.S. District Court
## District of Delaware (Wilmington)
## CIVIL DOCKET FOR CASE #: 1:03-cv-01160-GMS

| | |
|---|---|
| Genentech Inc., et al v. Wyeth, et al | Date Filed: 12/23/2003 |
| Assigned to: Judge Gregory M. Sleet | Date Terminated: 10/13/2005 |
| Demand: $0 | Jury Demand: None |
| Cause: 35:0146 Review of Board of Patent Appeals Decision | Nature of Suit: 830 Patent |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Genentech Inc.**                    represented by    **Rudolf E. Hutz**
                                                        Connolly, Bove, Lodge & Hutz
                                                        The Nemours Building
                                                        1007 North Orange Street
                                                        P.O. Box 2207
                                                        Wilmington, DE 19899
                                                        (302) 658-9141
                                                        Fax: (302) 658-5614
                                                        Email: rhutz@cblh.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Bayer Healthcare LLC**              represented by    **Rudolf E. Hutz**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Wyeth**                             represented by    **Josy W. Ingersoll**
                                                        Young, Conaway, Stargatt & Taylor
                                                        The Brandywine Building
                                                        1000 West Street, 17th Floor
                                                        P.O. Box 391
                                                        Wilmington, DE 19899-0391
                                                        (302) 571-6600
                                                        Email: jingersoll@ycst.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**

**Genetics Institute, LLC**              represented by  **Josy W. Ingersoll**
                                         (See above for address)
                                         *LEAD ATTORNEY*
                                         *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/23/2003 | 1 | COMPLAINT filed. Magistrate Consent Notice to Pltf. FILING FEE $ 150.00 RECEIPT # 135417 (dab) (Entered: 12/29/2003) |
| 12/23/2003 | | SUMMONS(ES) issued for Wyeth, Genetics Inst LLC (dab) (Entered: 12/29/2003) |
| 12/23/2003 | 2 | Report to Commissioner of Patents and Trademarks. Exit original. RE 4,868,112 (dab) (Entered: 12/29/2003) |
| 12/29/2003 | 3 | RETURN OF SERVICE executed as to Wyeth 12/24/03 Answer due on 1/13/04 for Wyeth (dab) (Entered: 12/29/2003) |
| 12/29/2003 | 4 | RETURN OF SERVICE executed as to Genetics Inst LLC 12/24/03 Answer due on 1/13/04 for Genetics Inst LLC (dab) (Entered: 12/29/2003) |
| 01/06/2004 | 5 | Disclosure Statement pursuant to Rule 7.1 by Bayer Healthcare LLC (dab) (Entered: 01/07/2004) |
| 01/07/2004 | 6 | CASE assigned to Judge Gregory M. Sleet . Notice to all parties. (rjb) (Entered: 01/07/2004) |
| 01/09/2004 | 7 | Disclosure Statement pursuant to Rule 7.1 by Genentech Inc. (gp) (Entered: 01/09/2004) |
| 01/13/2004 | 8 | 1ST STIPULATION extending time for defts to answer or respond to complaint (gp) (Entered: 01/13/2004) |
| 01/14/2004 | | So Ordered granting [8-1] stipulation extending time through 02/12/04 for defts to move or answer complaint( signed by Judge Gregory M. Sleet ) Notice to all parties. (gp) (Entered: 01/16/2004) |
| 01/16/2004 | | Deadline updated; reset Answer deadline to 2/12/04 for Genetics Inst LLC, for Wyeth (gp) (Entered: 01/16/2004) |
| 01/16/2004 | 9 | MOTION by Genentech Inc. for Coe A. Bloomberg, Lois M. Kwasigroch and Jerrold B. Reilly of Jones Day to Appear Pro Hac Vice (gp) (Entered: 01/20/2004) |
| 01/20/2004 | | So Ordered granting [9-1] motion for Coe A. Bloomberg, Lois M. Kwasigroch and Jerrold B. Reilly of Jones Day to Appear Pro Hac Vice ( signed by Judge Gregory M. Sleet ) Notice to all parties. (gp) (Entered: 01/20/2004) |
| 02/02/2004 | 10 | MOTION by Wyeth, Genetics Inst LLC for Timothy B. Donaldson, gregory A. Chopskie, and Robert D. Bajefsky of Finnegan, Henderson, Farabow, Garrett & Dunner to Appear Pro Hac Vice re: [10-1] motion (gp) (Entered: 02/04/2004) |
| 02/04/2004 | | So Ordered granting [10-1] motion for Timothy B. Donaldson, gregory A. |

| | | Chopskie, and Robert D. Bajefsky of Finnegan, Henderson, Farabow, Garrett & Dunner to Appear Pro Hac Vice ( signed by Judge Gregory M. Sleet ) Notice to all parties. (gp) (Entered: 02/05/2004) |
|---|---|---|
| 02/11/2004 | 11 | ANSWER to Complaint by Wyeth, Genetics Inst LLC (Attorney Josy Ingersol), (gp) (Entered: 02/17/2004) |
| 02/13/2004 | 12 | NOTICE from Judge Sleet of initial 16.2a telecnf. scheduled for 02/20/04 at 10:00 (gp) (Entered: 02/17/2004) |
| 02/13/2004 | | Deadline updated; set Telephone Conference for 10:00 2/20/04 (gp) (Entered: 02/17/2004) |
| 02/20/2004 | | Tele-conference held (rpt. Gaffigan) 16 conf. scheduled for 3/11/04 at 10:00 (gp) (Entered: 02/20/2004) |
| 02/20/2004 | | Deadline updated; set Scheduling Conference for 10:00 3/11/04 (gp) (Entered: 02/20/2004) |
| 02/20/2004 | 13 | Steno Notes for 02/20/04 (rpt. Gaffigan) (gp) (Entered: 02/20/2004) |
| 02/23/2004 | 14 | NOTICE of Scheduling Conf for 3/11/04, at 10:00 am (lg) (Entered: 03/02/2004) |
| 03/02/2004 | 15 | FIRST AMENDED ANSWER to Complaint by Wyeth, Genetics Inst LLC (lg) (Entered: 03/03/2004) |
| 03/03/2004 | 16 | JOINT STATUS REPORT for the 3/11/04 Scheduling Conf (lg) (Entered: 03/04/2004) |
| 03/04/2004 | 17 | CERTIFICATE OF SERVICE by Genentech Inc., Bayer Healthcare LLC Copies of Interrogs Nos. 1-3; Requests for Productions of Docs Nos. 1-22 and Requests for Admission Nos. 1-2 (asw) (Entered: 03/05/2004) |
| 03/08/2004 | 18 | MOTION by Genentech Inc. with Proposed Order for Allan W. Jansen to Appear Pro Hac Vice (lg) (Entered: 03/09/2004) |
| 03/10/2004 | | So Ordered granting [18-1] motion for Allan W. Jansen to Appear Pro Hac Vice ( signed by Judge Gregory M. Sleet ) Notice to all parties. (lg) (Entered: 03/10/2004) |
| 03/11/2004 | | Scheduling conference held; Judge Sleet presiding; Ct Rptr Maurer; Cnsl for Pltfs will file a Motion by 3/22/04; All Briefing due by the end of April; Court will issue an order referring the case to the Magistrate Judge; the Court will have another conf at a later date to impose a schedule (lg) (Entered: 03/12/2004) |
| 03/15/2004 | | So Ordered ( signed by Judge Gregory M. Sleet ) Notice to all parties. (asw) (Entered: 03/16/2004) |
| 03/15/2004 | 19 | ORDER referring the case matter to the U.S. Magistrate for the purpose of exploring the possibility of a settlement ( signed by Judge Gregory M. Sleet ) copies to: cnsl (asw) (Entered: 03/16/2004) |
| 03/15/2004 | 20 | Steno Notes for 3/11/04 RE: Scheduling Conference (asw) (Entered: |

|            |    | 03/16/2004)                                                                                                                                                                                                                                                      |
|------------|----|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 03/22/2004 | 21 | MOTION by Genentech Inc., Bayer Healthcare LLC with Proposed Order to Strike Defts' Affirmative Defense (asw) (Entered: 03/24/2004)                                                                                                                                         |
| 03/22/2004 | 22 | SEALED Opening Brief Filed by Genentech Inc., Bayer Healthcare LLC [21-1] motion to Strike Defts' Affirmative Defense - Answer Brief due 4/5/04 (asw) (Entered: 03/24/2004)                                                                                                  |
| 03/22/2004 | 23 | SEALED Declaration of Coe A. Bloomberg (asw) (Entered: 03/24/2004)                                                                                                                                                                                                         |
| 03/23/2004 | 24 | CERTIFICATE OF SERVICE by Bayer Healthcare LLC, Wyeth copies of Initial Disclosure Statement and this Notice (asw) (Entered: 03/24/2004)                                                                                                                                    |
| 03/23/2004 | 25 | Declaration of Coe A. Bloomberg (with an original signature page - the Declaration previously filed has a facsimile signature page) (asw) (Entered: 03/24/2004)                                                                                                              |
| 03/24/2004 | 26 | CERTIFICATE OF SERVICE by Genentech Inc., Bayer Healthcare LLC copies of Initial Disclosures (asw) (Entered: 03/24/2004)                                                                                                                                                    |
| 03/25/2004 | 27 | TRANSCRIPT filed for dates of 3/11/04 Scheduling Conf (lg) (Entered: 03/26/2004)                                                                                                                                                                                           |
| 03/29/2004 | 28 | CERTIFICATE OF SERVICE by Bayer Healthcare LLC, Wyeth copies First Set of Requests for Docs and Things (1-28) (asw) (Entered: 03/29/2004)                                                                                                                                   |
| 04/02/2004 | 29 | CERTIFICATE OF SERVICE by Wyeth, Genetics Inst LLC copies Objections and Responses to Interrogs Nos. 1-3; Objections and Responses Requests for Production of Docs Nos. 1-22; and Objections and Responses to Requests for Admissions Nos. 1-2 (lg) (Entered: 04/05/2004)    |
| 04/05/2004 | 30 | Answer Brief Filed by Wyeth, Genetics Inst LLC in Opposition to [21-1] motion to Strike Defts' Affirmative Defense - Reply Brief due 4/12/04 (lg) (Entered: 04/06/2004)                                                                                                      |
| 04/05/2004 | 31 | Declaration of Josy W. Ingersoll (lg) (Entered: 04/06/2004)                                                                                                                                                                                                                |
| 04/12/2004 | 32 | Reply Brief Filed by Genentech Inc., Bayer Healthcare LLC [21-1] motion to Strike Defts' Affirmative Defense (asw) (Entered: 04/14/2004)                                                                                                                                     |
| 04/26/2004 | 33 | CERTIFICATE OF SERVICE by Genentech Inc. copies Responses and Objections to First Set of Requests for Docs and Things (1-28) (lg) (Entered: 04/28/2004)                                                                                                                      |
| 04/26/2004 | 34 | CERTIFICATE OF SERVICE by Bayer Healthcare LLC copies Responses and Objections to First Set of Requests for Docs and Things (1-28) (lg) (Entered: 04/28/2004)                                                                                                                |
| 04/28/2004 | 35 | CERTIFICATE OF SERVICE by Wyeth, Genetics Inst LLC copies First Set of Interrogs (1-2) (lg) (Entered: 04/28/2004)                                                                                                                                                           |
| 05/27/2004 | 36 | NOTICE OF SERVICE by Genentech Inc., Bayer Healthcare LLC re: Plaintiff's Supplemental Rule 26(a)(1) Initial Disclosures, Responses and Objections to Wyeth's First Set of Interrogatories (1-2) and Genentech's                                                             |

| | | |
|---|---|---|
| | | Responses and Objections to Wyeth's First Set of Interrogatories (asw) (Entered: 05/28/2004) |
| 06/15/2004 | 37 | NOTICE OF SERVICE by Wyeth, Genetics Inst LLC re: Wyeth's Second Set of Requests for Documents and Things (Nos. 29-41) (asw) (Entered: 06/17/2004) |
| 07/15/2004 | 38 | NOTICE OF SERVICE by Genentech Inc., Bayer Healthcare re: Responses and Objections to Wyeth's 2nd Set of Requests for Documents and Things LLC (asw) (Entered: 07/19/2004) |
| 08/06/2004 | 39 | NOTICE OF SERVICE by Genentech Inc., Bayer Healthcare LLC re: Plaintiff's Interrogatories Nos. 4-9 (asw) (Entered: 08/10/2004) |
| 08/10/2004 | 40 | NOTICE OF SERVICE by Wyeth, Genetics Inst LLC re: Supplemental Objections and Responses to Plaintiff's Requests for Admissions (Nos. 1-2) (asw) (Entered: 08/11/2004) |
| 08/19/2004 | 41 | ORDER that a teleconference has been scheduled for 9/7/04 at 9:30 a.m. to discuss the scheduling of, the procedures involved and the types of alternative dispute resolutions available, including mediation conferences ( signed by Judge Mary P. Thynge ) copies to: Counsel (asw) (Entered: 08/23/2004) |
| 08/26/2004 | 42 | NOTICE OF SERVICE by Genentech Inc. re: Supplemental Responses to Defendant's First Set of Interrogatories (asw) (Entered: 08/27/2004) |
| 09/08/2004 | 43 | STIPULATED ORDER Governing the Protection and Exchange of Confidential Material with proposed order (asw) (Entered: 09/13/2004) |
| 09/14/2004 | | So Ordered granting [43-1] stipulation ( signed by Judge Gregory M. Sleet ) Notice to all parties. (asw) (Entered: 09/14/2004) |
| 09/20/2004 | 44 | NOTICE OF SERVICE by Wyeth, Genetics Inst LLC re: Objections and Responses to Plaintiffs' Interrogatories Nos. 4-9, and this Notice of Service (asw) (Entered: 09/23/2004) |
| 09/23/2004 | 45 | ORDER that the mediation conference has been scheduled for 2/28/05 at 10:00 a.m. ( signed by Judge Mary P. Thynge ) copies to: Counsel (asw) (Entered: 10/07/2004) |
| 02/14/2005 | 46 | ORDER canceling the mediation conference scheduled for 2/28/05 at 10:00 a.m. Signed by Judge Mary Pat Thynge on 2/14/05. (mmm, ) (Entered: 02/14/2005) |
| 04/08/2005 | 47 | Letter to Counsel from Marie McDavid, Case Manager, regarding request for status report. Status report due 4/22/05. (mmm) (Entered: 04/08/2005) |
| 04/08/2005 | | Set/Reset Deadlines: Status Report due by 4/22/2005. (mmm) (Entered: 04/08/2005) |
| 04/22/2005 | 48 | Joint STATUS REPORT by Genentech Inc., Bayer Healthcare LLC. (DiGiovanni, Francis) (Entered: 04/22/2005) |
| 08/11/2005 | 49 | ORDER directing counsel to file a Stipulation of Dismissal or a Status Report regarding settlement within ten (10) days of the date of this Order. Signed by |

|  |  | Judge Gregory M. Sleet on 8/11/05. (mmm) (Entered: 08/11/2005) |
|------------|-----|---|
| 08/25/2005 | 50 | Joint STATUS REPORT by Genentech Inc., Bayer Healthcare LLC, Wyeth, Genetics Institute, LLC. (DiGiovanni, Francis) (Entered: 08/25/2005) |
| 10/03/2005 | 51 | ORDER directing counsel to file a status report, or a stipulation of dismissal within ten (10) days of the date of this Order. Signed by Judge Gregory M. Sleet on 10/3/05. (mmm) (Entered: 10/03/2005) |
| 10/12/2005 | 52 | STIPULATION of Dismissal by Genentech Inc., Bayer Healthcare LLC, Wyeth, Genetics Institute, LLC. (DiGiovanni, Francis) (Entered: 10/12/2005) |
| 10/13/2005 |  | CASE CLOSED (asw ) (Entered: 10/13/2005) |
| 07/07/2006 | 53 | ORDER (including procedural letter and docket sheet), directing the return of sealed documents to the parties. Signed by Judge Gregory M. Sleet on 7/7/06. (Attachments: # 1 Letter to counsel # 2 Partial Docket Sheet)(rpg, ) (Entered: 07/10/2006) |
| 07/11/2006 | 54 | Acknowledgment of Receipt for sealed documents, D.I. 22 & 23 by Rudolf E. Hutz Esq. ( rpg, ) (Entered: 07/11/2006) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/15/2008 11:18:49 | | |
| **PACER Login:** | om0021 | **Client Code:** | 16381/151800-0008 |
| **Description:** | Docket Report | **Search Criteria:** | 1:03-cv-01160-GMS Start date: 1/1/1970 End date: 7/15/2008 |
| **Billable Pages:** | 3 | **Cost:** | 0.24 |

# EXHIBIT 4

UNITED STATES PATENT AND TRADEMARK OFFICE

―――――――――――

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

―――――――――――

GORDON A. VEHAR, DANIEL J. CAPON, RICHARD M. LAWN,
WILLIAM I. WOOD, and DAN L. EATON
Junior Party

v.

JOHN J. TOOLE, JR.
Senior Party

―――――――――――

Interference No. 103,215
Before Andrew H. Metz, Administrative Patent Judge

―――――――――――

**STATEMENT UNDER 37 C.F.R. § 1.602(c)**

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
1300 I STREET, NW
WASHINGTON, DC 20005-3315
202.408.4000

ATTORNEYS FOR SENIOR PARTY JOHN J. TOOLE, JR.

"RIBBON COPY FOR PARTY Toole J."

Senior Party Toole provides notice under 37 C.F.R. 602(c) concerning U.S. Patent No. 4,868,112, which is involved in this interference.  When the interference was initiated in 1994, the entire right, title, and interest in the patent was in Genetics Institute ("GI").  Thus, GI was its only real party in interest with regard to the patent.

In 1996, GI was purchased by American Home Products ("AHP") but GI still existed as wholly owned subsidiary of AHP.  Later, all of the assets of GI were transferred to AHP, and on March 11, 2002, AHP changed its name to Wyeth.  Thus, Wyeth is now the real party in interest and owner of all right, title and interest in U.S. Patent No. 4,868,112.

Respectfully submitted,


Rebecca M. McNeill
Jerry D. Voight, Reg. No. 23,020
Rebecca M. McNeill, Reg. No. 43,796
Timothy B. Donaldson, Reg. No. 43,592
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
1300 I STREET, NW
WASHINGTON, DC 20005-3315
202.408.4000

Dated:  May 1, 2002                    Attorneys for Senior Party Toole

2

## CERTIFICATE OF SERVICE

I hereby certify that two true copies of

### FILING UNDER 37 C.F.R. § 1.602(c)

were served, via Federal Express, on counsel for party Vehar et al., Coe A. Bloomberg,
Esq., Lyon & Lyon, LLP, 633 West Fifth Street, Suite 4700, Los Angeles, California
90071-2066, (213) 955-0440, on May 1, 2002.

*Rebecca M. McNeill*
Rebecca M. McNeill

# EXHIBIT 5

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| NOVARTIS VACCINES AND DIAGNOSTICS, INC., <br><br>     Plaintiff, <br><br> v. <br><br> WYETH and WYETH PHARMACEUTICALS INC., <br><br>     Defendants. | CIVIL ACTION NO. 2:08-CV-67 |

## DEFENDANTS WYETH AND WYETH PHARMACEUTICALS INC.'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS IN RESPONSE TO PLAINTIFF'S COMPLAINT

Defendants Wyeth and Wyeth Pharmaceuticals Inc. (collectively, "Wyeth") hereby respond to the Complaint for Patent Infringement of Plaintiff Novartis Vaccines and Diagnostics, Inc. ("Novartis"). Wyeth denies each and every allegation contained in the Complaint that is not expressly admitted below. Any factual allegation below is admitted only as to the specific admitted facts, not as to any purported conclusions, characterizations, implications or speculations that arguably follow from the admitted facts. Wyeth denies that Plaintiff is entitled to the relief requested or any other relief.

## ANSWER

1.    On information and belief, Wyeth admits that Novartis is a Delaware corporation, having its principal place of business at 4560 Horton Street, Emeryville, California 94608-2916.

2.     Wyeth admits that Defendant Wyeth is a Delaware corporation with a principal place of business at Five Giralda Farms, Madison, New Jersey 07940.

3.     Wyeth admits that Defendant Wyeth Pharmaceuticals, Inc. is a Delaware corporation having its principal place of business at 500 Arcola Road, Collegeville, Pennsylvania 19426.  Wyeth denies that Defendant Wyeth Pharmaceuticals Inc. is a division of Defendant Wyeth.  Wyeth admits that ReFacto® is indicated for the control and prevention of hemorrhagic episodes and for surgical prophylaxis and for short-term routine prophylaxis to reduce the frequency of spontaneous bleeding episodes in patients with hemophilia A.  Wyeth admits that Defendant Wyeth sells ReFacto® in the United States and that ReFacto® has been sold within the Eastern District of Texas.  Wyeth denies the remaining allegations and characterizations of paragraph 3.

4.     Wyeth denies some or all of "the acts set forth below" and, on at least that basis, denies the allegations of this paragraph.

5.     Wyeth admits that Novartis's claim for patent infringement purports to arise under the patent laws of the United States, 35 U.S.C. § 100, *et seq.* but denies that such claim has merit.  Wyeth admits that this Court has subject matter jurisdiction over this case under 28 U.S.C. §1338(a).

6.     For the purposes of this action only, Wyeth does not contest that personal jurisdiction in this district is proper.  Wyeth admits that Defendant Wyeth has conducted and conducts business in the State of Texas.  Wyeth admits that Defendant Wyeth offers for sale, sells and advertises products within the United States, the State of Texas and the Eastern District of Texas.  Wyeth denies the remaining allegations and characterizations of paragraph 6.

7.      For the purposes of this action only, Wyeth does not contest that venue is proper in the Eastern District of Texas.

8.      Wyeth reasserts and incorporates by reference each of the answers to paragraphs 1-7 above, as if fully set forth herein.

9.      Wyeth admits that U.S. Pat. No. 6,060,447 ("the '447 patent"), entitled "Protein Complexes Having Factor VIII:C Activity and Production Thereof" purports on its face to have been issued by the United States Patent and Trademark Office ("USPTO") on May 9, 2000, to Chiron Corporation and Novo Nordisk A/S as the named assignees.  Wyeth is without specific knowledge or information sufficient to form a belief as to the remaining allegations in this paragraph and, on that basis, denies them.

10.     Wyeth admits that Defendant Wyeth imports and sells a pharmaceutical composition encompassing a recombinant form of the human factor VIII protein under the trade name ReFacto®.   Wyeth further admits that ReFacto® is indicated for the control and prevention of hemorrhagic episodes and for surgical prophylaxis and for short-term routine prophylaxis to reduce the frequency of spontaneous bleeding episodes in patients with hemophilia A.  Wyeth denies the remaining allegations and characterizations of paragraph 10.

11.     Denied.

12.     Denied.

13.     Denied.

14.     Wyeth reasserts and incorporates by reference each of the answers to paragraphs 1-13 above, as if fully set forth herein.

15.     Wyeth admits that U.S. Pat. No. 6,228,620 ("the '620 patent"), entitled "Protein Complexes Having Factor VIII:C Activity and Production Thereof" purports on its face to have

been issued by the USPTO on May 8, 2001, to Chiron Corporation and Novo Nordisk A/S as the named assignees.  Wyeth is without specific knowledge or information sufficient to form a belief as to the remaining allegations in this paragraph and, on that basis, denies them.

16.     Wyeth admits that Defendant Wyeth imports and sells a pharmaceutical composition encompassing a recombinant form of the human factor VIII protein under the trade name ReFacto®.  Wyeth further admits that ReFacto® is indicated for the control and prevention of hemorrhagic episodes and for surgical prophylaxis and for short-term routine prophylaxis to reduce the frequency of spontaneous bleeding episodes in patients with hemophilia A.  Wyeth denies the remaining allegations and characterizations of paragraph 16.

17.     Denied.

18.     Denied.

19.     Denied.

## DEFENSES

### FIRST DEFENSE

20.     Wyeth has not infringed any claim of the '447 patent, either literally or under the doctrine of equivalents.

### SECOND DEFENSE

21.     Novartis is estopped from asserting that Wyeth has infringed the '447 patent as a result of arguments made to the USPTO during the prosecution of the '447 patent.

### THIRD DEFENSE

22.     The claims of the '447 patent are invalid for failure to meet the requirements of patentability under 35 U.S.C. § 101 *et seq*., including, without limitation, §§ 101, 102, 103, 112, and/or the judicially-created doctrine of double-patenting.

## FOURTH DEFENSE

23.     Wyeth has not infringed any claim of the '620 patent, either literally or under the doctrine of equivalents.

## FIFTH DEFENSE

24.     Novartis is estopped from asserting that Wyeth has infringed the '620 patent as a result of arguments made to the USPTO during the prosecution of the '620 patent.

## SIXTH DEFENSE

25.     The claims of the '620 patent are invalid for failure to meet the requirements of patentability under 35 U.S.C. § 101 *et seq*., including, without limitation, §§ 101, 102, 103, 112, and/or the judicially-created doctrine of double-patenting.

## SEVENTH DEFENSE

26.     Novartis, and its predecessor in interest in the '447 and '620 patents, Chiron Corporation, knew or should have known about Wyeth's ReFacto® product since at least 2000. By unjustifiably waiting at least seven years from the issuance of the '447 and '620 patents, Novartis's requested relief is barred by the doctrine of laches.  Moreover during the 1990s and early 2000s, Chiron and Wyeth had repeated dealings and communications relating to ReFacto® and/or related subject matter.  Based on these dealings and communications Novartis's requested relief is also barred by the doctrine of equitable estoppel.

## EIGHTH DEFENSE

27.     Novartis is barred by 35 U.S.C. § 288 from recovering any costs associated with this suit.

## COUNTERCLAIMS

Without admitting any of the allegations of the Complaint other than those expressly admitted herein, and without prejudice to Wyeth's right to plead additional counterclaims as the facts of the matter warrant, Wyeth hereby asserts the following counterclaims against Novartis:

1. Wyeth is a Delaware corporation having its principal place of business at Five Giralda Farms, Madison, New Jersey 07940.

2. Wyeth Pharmaceuticals, Inc. is a Delaware corporation having its principal place of business at 500 Arcola Road, Collegeville, Pennsylvania 19426.

3. On information and belief, Novartis Vaccine and Diagnostics, Inc. is a Delaware Corporation having its principal place of business at 4560 Horton Street, Emeryville, California 94608.

## JURISDICTION AND VENUE

4. These counterclaims arise under the Federal Declaratory Judgment Act and the Patent Laws of the United States and, more particularly, under Title 28 U.S.C. §§ 2201 and 2202, and Title 35 U.S.C. § 100, *et seq.*, respectively.  Jurisdiction is based on Title 28 U.S.C. §§ 1338 and 2201.  Venue is proper in this Court under 28 U.S.C. § 1391(b) and (c) and § 1400(b).

5. Novartis alleges it is the owner of all right, title, and interest in the '447 and '620 patents.

6. Novartis alleges that Wyeth infringes the '447 and '620 patent and has filed suit against Wyeth in this Court alleging infringement.

7. There exists an actual justiciable controversy between Wyeth and Novartis concerning the validity and infringement of the '447 and '620 patents based upon Novartis's allegations that Wyeth infringes the '447 and '620 patents.

## CLAIM I

8.      Wyeth incorporates by reference paragraphs 1-7 of these counterclaims as though fully repeated here.

9.      The claims of the '447 patent are invalid for failure to meet the requirements of the United States patent laws, 35 U.S.C. § 100 *et seq*., including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, and/or the judicially-created doctrine of double-patenting.

## CLAIM II

10.     Wyeth incorporates by reference paragraphs 1-9 of these counterclaims as though fully repeated here.

11.     The claims of the '620 patent are invalid for failure to meet the requirements of the United States patent laws, 35 U.S.C. § 100 *et seq*., including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, and/or the judicially-created doctrine of double-patenting.

## CLAIM III

12.     Wyeth incorporates by reference paragraphs 1-11 of these counterclaims as though fully repeated here.

13.     Wyeth has not infringed, induced infringement or contributed to the infringement of any valid claim, if any, of the '447 patent, either literally or under the doctrine of equivalents.

## CLAIM IV

14.     Wyeth incorporates by reference paragraphs 1-13 of these counterclaims as though fully repeated here.

15.     Wyeth has not infringed, induced infringement or contributed to the infringement of any valid claim, if any, of the '620 patent, either literally or under the doctrine of equivalents.

## CLAIM V

16.     Wyeth incorporates by reference paragraphs 1-15 of these counterclaims as though fully repeated here.

17.     Novartis, and its predecessor in interest in the '447 and '620 patents, Chiron Corporation, knew or should have known about Wyeth's ReFacto® product since at least 2000. By unjustifiably waiting at least seven years from the issuance of the '447 and '620 patents, Novartis's requested relief is barred by the doctrine of laches.  Moreover during the 1990s and early 2000s, Chiron and Wyeth had repeated dealings and communications relating to ReFacto® and/or related subject matter.  Based on these dealings and communications Novartis's requested relief is also barred by the doctrine of equitable estoppel.

## CLAIM VI

18.     Wyeth incorporates by reference paragraphs 1-17 of these counterclaims as though fully repeated here.

19.     For having brought this action, Novartis is liable under 35 U.S.C. § 285, making this case exceptional and Wyeth seeks recovery of its attorney fees under that statute as part of this counterclaim.

## <u>REQUEST FOR RELIEF</u>

Wherefore, premises considered, Wyeth respectfully requests that the Court grant the following relief:

(a)     Novartis is not entitled to recover any of its requested relief, and Novartis's Complaint be dismissed with prejudice and costs;

(b)     a declaration that the claims of the '447 patent are invalid;

(c)     a declaration that the claims of the '620 patent are invalid;

(d)     a declaration that Wyeth does not infringe any claim of the '447 patent and that Wyeth is not liable for inducing or contributing to the infringement of any claim of the '447 patent;

(e)     a declaration that Wyeth does not infringe any claim of the '620 patent and that Wyeth is not liable for inducing or contributing to the infringement of any claim of the '620 patent;

(f)     a declaration that Novartis's requested relief is barred by laches and equitable estoppel;

(g)     a declaration that this case is exceptional;

(h)     an award of costs and attorney fees to Wyeth; and

(i)     such other and further relief as this Court deems just and proper.

Dated: August 1, 2008                              Respectfully submitted,


                                          By:   _/s/ Stephen M. Hash_
                                                Jones & Jones, Inc., P.C.
                                                Franklin Jones, Jr.
                                                201 W Houston St., PO Drawer 1249
                                                Marshall, TX 75671-1249
                                                Tel:  (903) 938-4395
                                                Fax: (903) 938-3360

                                                William B. Dawson
                                                Willem G. Schuurman
                                                Robert M. Schick
                                                Stephen M. Hash
                                                VINSON & ELKINS, L.L.P.
                                                2801 Via Fortuna, Suite 100
                                                Austin, Texas  78701
                                                Tel :  (512) 542-8504
                                                Fax : (512) 236-3278
                                                bdawson@velaw.com
                                                bschuurman@velaw.com
                                                rschick@velaw.com
                                                shash@velaw.com

                                                *Attorneys for Defendants Wyeth and*
                                                *Wyeth Pharmaceuticals Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email and/or fax, on this the 1st day of August, 2008.


*/s/* Stephen M. Hash
Stephen M. Hash

# EXHIBIT 6

Westlaw.

Slip Copy                                                                                      Page 1
Slip Copy, 2006 WL 3041075 (N.D.Cal.)
**(Cite as: 2006 WL 3041075 (N.D.Cal.))**

**H**Alberta Telecommunications Research Centre v.
Rambus, Inc.
N.D.Cal.,2006.
Only the Westlaw citation is currently available.
United States District Court, N.D. California,
San Jose Division.
ALBERTA TELECOMMUNICATIONS
RESEARCH CENTRE, d/b/a TR Labs, a Canadian
Corporation, Plaintiff,
v.
RAMBUS INC., a California Corporation,
Defendant.
**No. C-06-02595 RMW.**
**[Docket No. 21].**

Oct. 24, 2006.

Dana Duane McDaniel, Hugh McCoy Fain, Sotts
Fain PC, Richmond, VA, Bernard Hon-Wei Chao,
Chao Hadidi Stark & Barker LLP, Menlo Park, CA,
George C. Summerfield, Stadheim & Grear, Ltd.,
Chicago, IL, for Plaintiff.
Thomas G. Slater, Jr., Hunton & Williams, Richard,
VA, Benjamin Lucas Hatch, Hunton & Williams
LLP, Richmond, VA, Jeannine Y. Sano, Saxon S.
Noh, Dewey Ballantine LLP, East Palo Alto, CA,
Thomas E. Anderson, Tyler Maddry, Hunton &
Williams, Washington, DC, for Defendant.

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION TO DISMISS

RONALD M. WHYTE, District Judge.
**\*1** Defendant Rambus moves to dismiss plaintiff
complaint for lack of subject matter jurisdiction and
failure to state a claim. Alberta Telecommunications
Research Centre's, doing business as TR Labs,
("Alberta") opposes the motion. The court has read
the moving papers and considered the arguments of
counsel. For the reasons set forth below, the court
grants in part and denies in part defendant's motion to
dismiss as follows: (1) Rambus's motion to dismiss
count one is granted with prejudice as to the '703
patent; (2) Rambus's motion to dismiss count one is
granted as to the '804 patent; (3) Rambus's motion to
dismiss count two is denied as to the '703 patent and

granted as to the '804 patent; (4) Rambus's motion to
dismiss count three is granted; and (5) Alberta has
twenty (20) days from the date of this order to amend
its complaint.

**I. BACKGROUND**

Alberta is a non-profit research consortium with a
principal place of business in Edmonton, Alberta,
Canada and offices throughout western Canada. It
alleges that it is the owner by assignment of U.S.
Patent No. 5,361,277, entitled "Methods and
Apparatus for Clock Distribution and for Clock
Synchronization" ("the '277 patent"). Compl. ¶ 3.
The '277 patent issued on November 1, 1994 and
purports to claim a priority date from a Canadian
patent application filed April 27, 1988. *Id.* ¶ 5. The
named inventor on the '277 patent is Dr. Wayne
Grover, Alberta's Chief Scientist in Network Systems
Research. *Id.* ¶ 4. According to the complaint, Dr.
Grover "had conceived of the invention of the ['277
patent] by at least May 1987, and had reduced that
invention to practice by July 1987." *Id.* ¶ 7. Alberta
alleges that the '277 patent is cited as prior art in
thirty-three of Rambus's patents. *Id.* ¶ 6.

Rambus is a "pure-play licensing company" and
derives its revenues by licensing its technologies to
others. *Id.* ¶ 24.According to the complaint, Rambus
has entered into license agreements for its patented
technology with a number of integrated circuit chip
manufacturers worldwide. *Id.* ¶ 32.The complaint
alleges, *inter alia,* that Rambus infringes by making
available know-how and other technical assistance,
such as a validation program performed at third party
laboratories, to its licensees. *Id.* ¶ 15.Rambus owns
by assignment U.S. Patent No. 5,243,703, entitled
"Apparatus for Synchronously Generating Clock
Signals in a Data Processing System" ("the '703
patent").*Id.* ¶ 17.The '703 patent issued on September
7, 1993 and claims a priority date of April 18, 1990.
*Id.* Alberta alleges that the named inventors of
Rambus's '703 patent, Drs. Farmwald and Horowitz,
"did not have a complete set of ideas for addressing
the problems allegedly solved by the subject matter
of the [April 1990 patent application] until early
1990." *Id.* ¶ 23.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Alberta alleges that the '703 patent is part of the portfolio from which Rambus derives its royalty income. Id. ¶ 30. Alberta also alleges that Rambus's licensing portfolio also includes U.S. Patent No. 5,954,804 ("the ' 804 patent"). Id. ¶ 31.

**\*2** The complaint alleges three causes of action. In Count I, Alberta claims an action for interference under 35 U.S.C. § 291 between claims in Rambus's '703 patent and Alberta's '277 patent and between claims in Rambus's '804 patent and Alberta's '277 patent. The complaint sets forth a tabular comparison of claims in Rambus's '703 patent and claim one of Alberta's '277 patent, which Alberta alleges demonstrate how claim one of its '277 patent anticipates or renders obvious the listed claims of Rambus's '703 patent, and vice versa. Id. ¶ 37. In Count II, Alberta asserts willful patent infringement based on Rambus's licensing of its technology and provision of know-how and other technical assistance in connection with its licensing activities. Id. ¶ 42. The complaint sets forth a tabular presentation of certain claim limitations in Alberta's '277 patent compared against a purported description of "Rambus Operations" apparently based on various Rambus documents and patents. Id. ¶ 41. In Count III, Alberta claims unjust enrichment based on the revenues Rambus has derived from licensing the '703 and '804 patents because it contends those patents interfere with the more senior '277 patent. Id. ¶¶ 46-48.

## II. ANALYSIS

### A. Interference Under 35 U.S.C. § 291

### 1. Rambus's '703 Patent

Rambus asserts that the court lacks subject matter jurisdiction over a section 291 claim as to the '703 patent and that Alberta lacks standing to bring the claim. Specifically, Rambus argues that Alberta has not and cannot allege any interference-in-fact since Rambus's '703 patent has expired.

Section 291 "is solely the basis for an action to eliminate interference between patents." Albert v. Kevex Corp., 729 F.2d 757, 761 (Fed.Cir.1984). A district court does not have jurisdiction under § 291 unless interference is established. Id. at 760-61; see also Medichem, S.A. v. Rolabo, S.L., 353 F.3d 928,

930 (Fed.Cir.2003) (Section 291 "provides a cause of action to one patent owner against another patent owner where the inventions claimed by their respective patents interfere with one another."). [FN1] In Albert, the plaintiff filed suit under § 291, asserting that defendant's patent interfered with plaintiff's patent. 729 F.2d at 760. The defendant subsequently disclaimed under 35 U.S.C. § 253 and 37 C.F.R. § 1.321 all allegedly interfering claims of its patent. Id. at 760. The Federal Circuit held that this disclaimer rendered moot the interfering patent suit and deprived the court of subject-matter jurisdiction to pass on the validity of one of the patents originally alleged to interfere. Id. Judge Giles Rich, writing for the panel, stated:

> FN1. Section 291 provides in full:
>
>> The owner of an interfering patent may have relief against the owner of another by civil action, and the court may adjudge the question of the validity of any of the interfering patents, in whole or in part. The provisions of the second paragraph of section 146 of this title shall apply to actions brought under this section.
>
> 35 U.S.C. § 291.

Under any construction of § 291, it is impossible to conceive how it could be any clearer that interference between patents is a sine qua non of an action under § 291. Absent interference, a court has no power under § 291 to adjudicate the validity of any patent. We hold that the court has no jurisdiction under § 291 unless interference is established. Mere citation of that statute or recitation in a pleading as a basis for suit is not enough.
**\*3** Id. at 760-61 (emphasis in original).

Alberta's arguments in opposition are unpersuasive. Alberta argues that an expired patent may still be the subject of an interference action under § 291. However, Alberta has not shown that "interference does in fact exist" with the expired '703 patent. See id. at 760-61 ("When challenged, the pleader must establish that interference does in fact exist."). Here, Alberta's complaint relies in part on its allegation that Rambus's '703 patent "is part of the portfolio from which Rambus derives its royalty income." Compl. ¶ 30. However, Alberta does not now dispute that the

'703 patent has expired. Although the *Albert* case involved claims that were disclaimed by the patent holder, the reasoning in *Albert* nevertheless supports that expiration of the alleged interfering patent likewise moots the claim of interference. Given the stringent requirement of an interference "in fact" from *Albert,* the court concludes that an expired patent cannot form the basis of an interference under § 291. *See also Engler v. Gen'l Elec. Co.,* 144 F.2d 191 (2d Cir.1944) (observing that under 35 U.S.C. § 66, a prior version of section 291, "the owner of an expired patent cannot maintain [an interference] suit since the claims of an expired patent are no longer of any force or effect and cannot be interfered with those of any other patent"); *Regents of University of California v. Eli Lilly & Co.,* 777 F.Supp. 779, 782 (N.D.Cal.1991) (Jensen, J.) ("An action under section 291 is only possible if two or more parties are claiming the same or substantially the same subject matter."). As this means there is no live controversy regarding the interference of the '277 and '703 patents, *Albert* mandates dismissal of Alberta's § 291 action as to Rambus's '703 patent for lack of subject matter jurisdiction.

Alberta attempts to distinguish the present action on the grounds that (1) Rambus purposely allowed the '703 patent to expire after Alberta put Rambus on notice of its interference claim [FN2], and (2) "the remedy sought by [Alberta] in this case is the assignment of the claims of the '703 patent and disgorgement of Rambus'[s] licensing royalties, as opposed to a declaration that such claims are invalid." Alberta's Opp. at 2:8-19. The allegation that Rambus purposefully permitted its patent to lapse does not change the jurisdictional analysis under § 291. In *Albert,* the Federal Circuit noted that "[a] claim under § 291, however, depends so completely on the existence of interference that lack of it, *whenever it becomes apparent,* must be deemed fatal to jurisdiction." *Id.* at 762 n. 4 (emphasis added). In addition, Judge Rich emphasized that § 291 was not a vehicle for determining patent validity outside of the context of an actual case or controversy. *Id.* at 761. An argument that the remedy sought is assignment of the interfering claims rather than a declaration of invalidity does not save a claim for which subject matter jurisdiction is lacking. [FN3]

> **FN2.** The parties do not dispute that the '703 patent expired because of failure to pay the

maintenance fees. *See* Rambus's Mot. Dismiss at 5:16-17; Alberta's Opp. at 2:9-12.

> FN3. In so concluding, the court does not take a position on whether a request for assignment to the complaining party of the alleged interfering claims is a proper remedy under § 291. Alberta argues that if it secures the assignment of the lapsed Rambus claims, it can later revive those claims pursuant to 35 U.S.C. § 41(c). The court notes that this argument does not support a conclusion that interference-in-fact is established or that jurisdiction under § 291 otherwise exists. In particular, Rambus's argument that assignment would be pointless since the premise of interference is that the plaintiff already possesses the allegedly interfering claims is well taken.

## 2. Rambus's '804 Patent

**\*4** Rambus argues that Alberta's allegations of interference by the Rambus ' 804 patent are insufficient because the complaint makes "passing reference only" to the '804 patent. The complaint alleges: (1) "Third-party intellectual property analyses have shown the similarities between the subject matter of the [Alberta] ... patents on the one hand, and the subject matter of the Rambus '703 and '804 patents, on the other hand," compl. ¶ 35; (2) "In similar fashion to the Rambus '703 patent, claim 1 of the [Alberta] patent anticipates and/or renders obvious the claims of the Rambus '804 patent, and *vice versa.*As such, there is an interference-in-fact between those claims as well,"*id.* ¶ 38; and (3) Rambus's licensing portfolio also includes the ' 804 patent, *id.* ¶ 31.Alberta's allegations are too conclusory and vague to plead a cause of action under § 291. "Without first identifying an interference-in-fact under the two-way test, a court has no jurisdiction to make a priority determination between two patents under § 291."*Medichem,* 353 F.3d at 932. "An interference-in-fact exists when at least one claim of a party that is designated to correspond to a count and at least one claim of an opponent that is designated to correspond to the count define *the same patentable invention."Id.* at 932 (emphasis in original) (quoting 37 C.F.R. § 1.601(j)). The conclusory allegations in the complaint are insufficient to show that an interference-in-fact

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                Page 4
Slip Copy, 2006 WL 3041075 (N.D.Cal.)
**(Cite as: 2006 WL 3041075 (N.D.Cal.))**

exists between any particular claim in the ' 277 patent and any particular claim in the '804 patent.

## B. Patent Infringement

Rambus first argues that mere licensing of its patents cannot constitute direct infringement [FN4] because (1) a patent grants the right to exclude other from making, using, or selling the patented invention, but does not confer the right to practice the claimed invention, and (2) licenses are considered nothing more than the licensor's promise not to sue the licensee. Therefore, Rambus argues, its licenses do not infringe because they do not confer an affirmative right to practice the subject matter licensed. In opposition, Alberta concedes that there is no case law supporting the proposition that the mere licensing of a patent can be the basis of an infringement claim, but argues that it nevertheless states a patent infringement claim under a broad interpretation of the term "use" under 35 U.S.C. § 271(a). The court need not reach this issue in the present motion to dismiss. As discussed below, because Alberta has also alleged that Rambus does more than merely license patents, the court finds that Alberta has otherwise stated a claim for patent infringement. *See Kumar v. Ovonic Battery Co., Inc., 351 F.3d 1364, 1372 (Fed.Cir.2003)* (choosing not to decide the issue of whether mere licensing constitutes direct infringement because "Kumar also argues that Ovonic is liable for infringement because it did more than merely license patents").

> FN4. Rambus clarifies in its reply brief that, as to the patent infringement claim, "Rambus is not moving to dismiss the claim for inducing infringement of the '703 patent."Rambus's Reply 11:8-10. Rather, Rambus contends "to the extent Alberta is arguing that the act of licensing of a patent or patents itself can constitute a form of infringement, Alberta has failed to state a claim for infringement and that aspect of its allegations should be dismissed."*Id. at 11:12-15.*

**\*5** Here, Alberta also argues that it has alleged patent infringement based on both Rambus's indirect infringement (including inducing infringement), activities such as product testing by Rambus, and other non-licensing products and services allegedly

offered along with Rambus's licenses. Alberta's complaint alleges, *inter alia,* (1) that aspects of Rambus's technology and operations, including claims in the '703 patent, infringe upon specific claims of the '277 patent, (2) that Rambus's licensing of this described subject matter, and the accompanying know-how and other activities, directly and indirectly infringed claims of the '277 patent, and (3) that Intel has used the licensed Rambus technology to infringe the claims of the '277 patent. Alberta's allegations regarding Rambus's '804 patent are limited and conclusory. These allegations, even if accepted as true and viewed in the light most favorable to plaintiff, are too vague to adequately state a claim that Rambus's '804 patent infringes the '277 patent. As to the '703 patent, the court notes that the complaint's comparison of aspects of Rambus's technology and operations to claims of the '277 patent does not clearly identify what aspect of the described technology Rambus allegedly makes, uses, offers to sell, or sells. Nevertheless, the court finds that Alberta's allegations as to the '703 patent are sufficient to meet the pleading requirements of Rule 8 in stating a claim of patent infringement.

## C. Unjust Enrichment

Alberta's unjust enrichment claim is premised on its assertion that Rambus's ' 703 and '804 patents interfere with the '277 patent. As noted above, the complaint has not sufficiently pled such interference. Accordingly, Rambus's motion is granted as to Alberta's unjust enrichment claim.

## D. Leave to Amend

Leave to amend is to be freely granted when justice so requires. *See* Fed.R.Civ.P. 15(a). Fed.R.Civ.P. 15(a)'s edict that "leave shall be freely given when justice so requires" is "to be applied with extreme liberality."*Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir.2003)* (quoting *Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir.2001)* (citations omitted)). Absent prejudice or a strong showing of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by amendment, or futility of amendment, "there exists a presumption under Rule 15(a) in favor of granting leave to amend."*Id.* at 1052.

Rambus argues that leave to amend count one should

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

not be granted as to the ' 804 patent because a review of the claims in the patent makes clear that the '804 patent does not interfere with Alberta's '277 patent. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Dismissal can be based on the "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."*Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.1988).* A court must not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."*Conley v. Gibson, 355 U.S. 41, 45-46 (1957).* As noted above, the court dismisses the claim because it finds that the complaint does not set forth sufficient allegations to establish interference-in-fact as between the '804 and '277 patents. However, the court cannot conclude at this point that amendment would be futile.

### III. ORDER

**\*6** For the foregoing reasons, the court grants Rambus's motion in part and denies it in part as follows:

1. Rambus's motion to dismiss count one is granted with prejudice as to the ' 703 patent;

2. Rambus's motion to dismiss count one is granted as to the '804 patent;

3. Rambus's motion to dismiss count two is denied as to the '703 patent and granted as to the '804 patent;

4. Rambus's motion to dismiss count three is granted; and

5. Alberta has twenty (20) days from the date of this order to amend its complaint.

N.D.Cal.,2006.
Alberta Telecommunications Research Centre v. Rambus, Inc.
Slip Copy, 2006 WL 3041075 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 7

# Manual of PATENT EXAMINING PROCEDURE

Original Eighth Edition, August 2001
Latest Revision September 2007



## U.S. DEPARTMENT OF COMMERCE
### United States Patent and Trademark Office

The U.S. Patent and Trademark Office does not handle the sale of the Manual, distribution of notices and revisions, or change of address of those on the subscription list. Correspondence relating to existing subscriptions should be sent to the Superintendent of Documents at the following address:

Superintendent of Documents          Telephone:    202-512-2267
Mail List Section
Washington, DC 20402

Inquiries relating to purchasing the Manual should be directed to:

Superintendent of Documents          Telephone:    202-512-1800
United States Government Printing Office
Washington, DC 20402

Orders for reproduced copies of individual replacement pages or of previous revisions of the Manual should be sent to the following address:

Mail Stop Document Services           Telephone:    1-800-972-6382 or 571-272-3150
Director of the U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

Previous editions and revisions of the Manual are available on microfilm in the Patent Search Room.
The Manual is available on CD-ROM and on diskette from:

U.S. Patent and Trademark Office        Telephone:    571-272-5600
Office of Electronic Information Products
MDW 4C18,  P.O. Box 1450
Alexandria, VA 22313-1450

Employees of the U.S. Patent and Trademark Office should direct their requests for the Manual, replacement pages, notices, and revisions to the Office of Patent Training.          Telephone:    571-272-7222

Pursuant to the Patent and Trademark Office Efficiency Act (PTOEA) (Pub. L. 106-113, 113 Stat. 1501A-572), the head of the United States Patent and Trademark Office (USPTO) is the "Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office." The Director is assisted by the "Deputy Under Secretary of Commerce for Intellectual Property and Deputy Director of the United States Patent and Trademark Office." The patent operations of the USPTO are now headed by the "Commissioner for Patents." The trademark operations of the USPTO are now headed by the "Commissioner for Trademarks." Under section 4741(b) of the PTOEA, any reference to the Commissioner of Patents and Trademarks, the Assistant Commissioner for Patents, or the Assistant Commissioner for Trademarks is deemed to refer to the Director, the Commissioner for Patents, or the Commissioner for Trademarks, respectively. See "Reestablishment of the Patent and Trademark Office as the United States Patent and Trademark Office" published in the *Federal Register* at 65 FR 17858 (Apr. 5, 2000), and in the *Official Gazette of the United States Patent and Trademark Office* at 1234 O.G. 41 (May 9, 2000).

Additions to the text of the Manual are indicated by arrows (><) inserted in the text.   Deletions are indicated by a single asterisk (*) where a single word was deleted and by two asterisks (**) where more than one word was deleted. The use of three or five asterisks in the body of the laws, rules, treaties, and administrative instructions indicates a portion of the law, rule, treaty, or administrative instruction which was not reproduced.

First Edition, November 1949
Second Edition, November 1953
Third Edition, November 1961
Fourth Edition, June 1979
Fifth Edition, August 1983
Sixth Edition, January 1995
Seventh Edition, July 1998
Eighth Edition, August 2001
   Revision 1, February 2003
   Revision 2, May 2004
   Revision 3, August 2005
   Revision 4, October 2005
   Revision 5, August 2006
   Revision 6, September 2007

# Chapter 2700  Patent Terms and Extensions

2701    Patent Term
2710    Term Extensions or Adjustments for Delays Within the USPTO Under 35 U.S.C. 154
2720    Applications Filed Between June 8, 1995, and May 28, 2000
2730    Applications Filed On or After May 29, 2000; Grounds for Adjustment
>2731   Period of Adjustment
2732    Reduction of Period of Adjustment of Patent Term
2733    Determination of Patent Term Adjustment
2734    Application for Patent Term Adjustment; Due Care Showing
2735    Request for Reconsideration of Patent Term Adjustment Determination
2736    Third Party Papers<
2750    Patent Term Extension for Delays at other Agencies Under 35 U.S.C. 156
2751    Eligibility Requirements
2752    Patent Term Extension Applicant
2753    Application Contents
2754    Filing Date
2754.01   Deadline for Filing an Application Under 35 U.S.C. 156(d)(1)
2754.02   Filing Window for an Application Under 35 U.S.C. 156(d)(5)
2754.03   Filing of a Request for an Extension Under 35 U.S.C. 156(e)(2)
2755    Eligibility Determination
2755.01   Interim Extension of Patent Term During the Processing of the Application
2755.02   Interim Extension of Patent Term Before Product Approval
2756    Correspondence Between the USPTO and the Regulatory Agency
2757    Regulatory Agency Determination of the Length of the Regulatory Review Period
2757.01   Due Diligence Determination
2758    Notice of Final Determination - Calculation of Patent Term Extension
2759    Certificate of Extension of Patent Term
2760    Trade Secret, Confidential, and Protective Order Material
2761    Multiple Applications for Extension of Term of the Same Patent or of Different Patents for the Same Regulatory Review Period for a Product
2762    Duty of Disclosure in Patent Term Extension Proceedings
2763    Limitation of Third Party Participation
2764    Express Withdrawal of Application for Extension of Patent Term

## 2701    Patent Term [R-2]

*35 U.S.C. 154.  Contents and term of patent; provisional rights.*

(a)  IN GENERAL.—

*****

(2)  TERM.—Subject to the payment of fees under this title, such grant shall be for a term beginning on the date on which the patent issues and ending 20 years from the date on which the application for the patent was filed in the United States or, if the application contains a specific reference to an earlier filed application or applications under section 120, 121, or 365(c) of this title, from the date on which the earliest such application was filed.

(3)  PRIORITY.—Priority under section 119, 365(a), or 365(b) of this title shall not be taken into account in determining the term of a patent.

*****

(c)  CONTINUATION.—

(1)  DETERMINATION.—The term of a patent that is in force on or that results from an application filed before the date that is 6 months after the date of the enactment of the Uruguay Round Agreements Act shall be the greater of the 20-year term as provided in subsection (a), or 17 years from grant, subject to any terminal disclaimers.

(2)  REMEDIES.—The remedies of sections 283, 284, and 285 of this title shall not apply to acts which —

(A)  were commenced or for which substantial investment was made before the date that is 6 months after the date of the enactment of the Uruguay Round Agreements Act; and

(B)  became infringing by reason of paragraph (1).

(3)  REMUNERATION.—The acts referred to in paragraph (2) may be continued only upon the payment of an equitable remuneration to the patentee that is determined in an action brought under chapter 28 and chapter 29 (other than those provisions excluded by paragraph (2)) of this title.

*****

For applications filed on or after June 8, 1995, Section 532(a)(1) of the Uruguay Round Agreements Act (Pub. L. 103-465, 108 Stat. 4809 (1994)) amended 35 U.S.C. 154 to provide that the term of a patent (other than a design patent) begins on the date the patent issues and ends on the date that is twenty years from the date on which the application for the patent was filed in the United States or, if the application contains a specific reference to an earlier filed application or applications under 35 U.S.C. 120, 121, or 365(c), twenty years from the filing date of the

should make plans for another to take over his or her work so that it is completed and filed in the Office within the three-month period. Thus, failure to reply within the three-month period in 35 U.S.C. 154(b)(2)(C)(ii) due to preoccupation with other matters (e.g., an *inter partes* lawsuit or interference) given priority over the application, or vacation or other non-attention to an application, cannot be relied upon to show that applicant was unable to reply "in spite of all due care" under 35 U.S.C. 154(b)(3)(C).<

>

# 2735    Request for Reconsideration of Patent Term Adjustment Determination [R-2]

*37 CFR 1.705. Patent term adjustment determination.*

\*\*\*\*\*

(d) If there is a revision to the patent term adjustment indicated in the notice of allowance, the patent will indicate the revised patent term adjustment. If the patent indicates or should have indicated a revised patent term adjustment, any request for reconsideration of the patent term adjustment indicated in the patent must be filed within two months of the date the patent issued and must comply with the requirements of paragraphs (b)(1) and (b)(2) of this section. Any request for reconsideration under this section that raises issues that were raised, or could have been raised, in an application for patent term adjustment under paragraph (b) of this section shall be dismissed as untimely as to those issues.

(e)    The periods set forth in this section are not extendable.

\*\*\*\*\*

Since the Office is obligated to provide a determination of patent term adjustment under 35 U.S.C. 154(b) in the notice of allowance (i.e., before the actual patent issue date), the Office must project (or estimate) the actual patent issue date and base its patent term adjustment determination on that projection. Additionally, there are a number of papers which if submitted by an applicant after the mailing of the notice of allowance will result in a reduction of any patent term adjustment, and there may be Office delays occurring after mailing the notice of allowance resulting in an increase in the amount of patent term adjustment. Thus, 37 CFR 1.705(d) provides for a revision of the patent term adjustment when revision is necessitated by events occurring after the mailing of the notice of allowance. 37 CFR 1.705(d) specifically provides that if there is a revision to the patent

term adjustment indicated in the notice of allowance, the patent will indicate the revised patent term adjustment. 37 CFR 1.705(d) also provides that if the patent indicates or should have indicated a revised patent term adjustment, any request for reconsideration of the patent term adjustment indicated in the patent must be filed within two months of the date the patent issued and must comply with the requirements of 37 CFR 1.705(b). The two month period is not extendable. 37 CFR 1.705(e).

Any request for reconsideration under 37 CFR 1.705(d) that raises issues that were raised, or could have been raised, in an application for patent term adjustment under 37 CFR 1.705(b) shall be dismissed as untimely as to those issues.<

>

# 2736    Third Party Papers [R-2]

*37 CFR 1.705. Patent term adjustment determination.*

\*\*\*\*\*

(f)    No submission or petition on behalf of a third party concerning patent term adjustment under 35 U.S.C. 154(b) will be considered by the Office. Any such submission or petition will be returned to the third party, or otherwise disposed of, at the convenience of the Office.

\*\*\*\*\*

37 CFR 1.705(f) implements the provisions of 35 U.S.C. 154(b)(4)(B) and provides that no submission or petition on behalf of a third party concerning patent term adjustment under 35 U.S.C. 154(b) will be considered by the Office, and that any such submission or petition will be returned to the third party, or otherwise disposed of, at the convenience of the Office.<

# 2750    Patent Term Extension for Delays at other Agencies under 35 U.S.C. 156 [R-2]

The right to a patent term extension based upon regulatory review is the result of the Drug Price Competition and Patent Term Restoration Act of 1984, Pub. L. No. 98-417, 98 Stat. 1585 (codified at 21 U.S.C. 355(b), (j), (l); 35 U.S.C. 156, 271, 282)(Hatch-Waxman Act). The act sought to eliminate two distortions to the normal "patent term produced by the requirement that certain products must receive premarket regulatory approval." *Eli Lilly & Co. v. Medtronic Inc.*, 496 U.S. 661, 669, 15 USPQ2d

1121, 1126 (1990). The first distortion was that the patent owner loses patent term during the early years of the patent because the product cannot be commercially marketed without approval from a regulatory agency. The second distortion occurred after the end of the patent term because competitors could not immediately enter the market upon expiration of the patent because they were not allowed to begin testing and other activities necessary to receive FDA approval before patent expiration.

The part of the act codified as 35 U.S.C. 156 was designed to create new incentives for research and development of certain products subject to premarket government approval by a regulatory agency. The statute enables the owners of patents on certain human drugs, food or color additives, medical devices, animal drugs, and veterinary biological products to restore to the terms of those patents some of the time lost while awaiting premarket government approval from a regulatory agency. The rights derived from extension of the patent term are limited to the approved product (as defined in 35 U.S.C. 156(a)(4) and (a)(5)). See 35 U.S.C. 156(b). Accordingly, if the patent claims other products in addition to the approved product, the exclusive patent rights to the additional products expire with the original expiration date of the patent.

In exchange for extension of the term of the patent, Congress legislatively overruled *Roche Products v. Bolar Pharmaceuticals*, 733 F.2d 858, 221 USPQ 937 (Fed. Cir. 1984) as to products covered by 35 U.S.C. 271(e) and provided that it shall not be an act of infringement, for example, to make and test a patented drug solely for the purpose of developing and submitting information for an Abbreviated New Drug Application (ANDA). 35 U.S.C. 271(e)(1). See Donald O. Beers, *Generic and Innovator Drugs: A Guide to FDA Approval Requirements*, Fifth Edition, Aspen Law & Business, 1999, 4.3[2] for a discussion of the Hatch-Waxman Act and infringement litigation. Furthermore, Congress provided that an ANDA cannot be filed until five years after the approval date of the product if the active ingredient or a salt or ester of the active ingredient had not been previously approved under section 505(b) of the Federal Food, Drug and Cosmetic Act. 21 U.S.C. 355(j)(4)(D)(ii). See also Lourie, *Patent Term Restoration: History,*

*Summary, and Appraisal*, 40 Food, Drug and Cosmetic L. J. 351, 353-60 (1985). See also Lourie, *Patent Term Restoration*, 66 J. Pat. Off. Soc'y 526 (1984).

On November 16, 1988, 35 U.S.C. 156 was amended by Public Law 100-670, essentially to add animal drugs and veterinary biologics to the list of products that can form the basis of patent term extension. Animal drug products which are primarily manufactured through biotechnology are excluded from the provisions of patent term extension.

On December 3, 1993, 35 U.S.C. 156 was further amended to provide for interim extension of a patent where a product claimed by the patent was expected to be approved, but not until after the original expiration date of the patent. Public Law 103-179, Section 5.

An application for the extension of the term of a patent under 35 U.S.C. 156 must be submitted by the owner of record of the patent or its agent within the sixty-day period beginning on the date the product received permission for commercial marketing or use under the provision of law under which the applicable regulatory review period occurred for commercial marketing or use. See 35 U.S.C. 156(d)(1). The USPTO initially determines whether the application is formally complete and whether the patent is eligible for extension. The statute requires the **>Director of the United States Patent and Trademark Office< to notify the Secretary of Agriculture or the Secretary of Health and Human Services of the submission of an application for extension of patent term which complies with 35 U.S.C. 156 within sixty days and to submit to the Secretary a copy of the application. Not later than thirty days after receipt of the application from the *>Director<, the Secretary will determine the length of the applicable regulatory review period and notify the *>Director< of the determination. If the *>Director< determines that the patent is eligible for extension, the *>Director< calculates the length of extension for which the patent is eligible under the appropriate statutory provision and issues an appropriate Certificate of Extension.

Patent term extensions provided by private relief legislation, public laws other than as enacted by 35 U.S.C. 156, such as 35 U.S.C. 155 and 155A, are not addressed herein.

# EXHIBIT 8

UNITED STATES PATENT AND TRADEMARK OFFICE

AUG 29 2006

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

Steven P. O'Connor
Finnegan Henderson Farabow Garrett & Dunner LLP
901 New York Ave., NW
Washington DC 20001-4413

In Re: Patent Term Extension
Application for
U.S. Patent No. 4,868,112

## NOTICE OF FINAL DETERMINATION

A determination has been made that U.S. Patent No. 4,868,112, which claims the human biologic product ReFacto® (novel procoagulant proteins) and a method of making ReFacto®, is eligible for patent term extension under 35 U.S.C. § 156. The period of extension has been determined to be 1,258 days.

A single request for reconsideration of this final determination as to the length of extension of the term of the patent may be made if filed within <u>one month</u> of the date of this notice. Extensions of time under 37 CFR § 1.136(a) are not applicable to this time period. In the absence of such request for reconsideration, the Director will issue a certificate of extension, under seal, for a period of 1,258 days.

The period of extension has been calculated using the Food and Drug Administration determination of the length of the regulatory review period published in the Federal Register of February 5, 2002 (67 Fed. Reg. 5289). Under 35 U.S.C. § 156(c):

$$\text{Period of Extension} = \text{½ (Testing Phase)} + \text{Approval Phase}$$
$$= \text{½ (987)} + 764$$
$$= 1,258 \text{ days (3.4 years)}$$

Since the regulatory review period began May 23, 1995, after the patent issued (September 19, 1989), the entire regulatory review period has been considered in the above determination of the length of the extension period 35 U.S.C. § 156(c). No determination of a lack of due diligence under 35 U.S.C. § 156(c)(1) was made.

Neither the limitations of 35 U.S.C. § 156(g)(6) nor 35 U.S.C. § 156(c)(3) operate to reduce the period of extension determined above.

Upon issuance of the certificate of extension, the following information will be published in the Official Gazette:

U.S. Patent No.:                      4,868,112

Granted:                             September 19, 1989

Original Expiration Date[1]:          September 19, 2006

Applicant:                           John J. Toole, Jr.

Owner of Record:                     Genetics Institute LLC

_____

[1]Subject to the provisions of 35 U.S.C. § 41(b).

U.S. Patent No. 4,868,112                                    Page 2

| | |
|---|---|
| Title: | Novel Procoagulant Proteins |
| Product Trade Name: | ReFacto® (novel procoagulant proteins) |
| Term Extended: | 1,258 days |
| Expiration Date of Extension: | February 28, 2010 |

Any correspondence with respect to this matter should be addressed as follows:

By mail:    Mail Stop Patent Ext.        By FAX:    (571) 273-7755
            Commissioner for Patents
            P.O. Box 1450
            Alexandria, VA 22313-1450.

Telephone inquiries related to this determination should be directed to Mary C. Till at (571) 272-7755.

Kery A. Fries
Senior Legal Advisor
Office of Patent Legal Administration
Office of the Deputy Assistant Commissioner
 for Patent Policy and Projects

cc:    Office of Regulatory Policy        RE: ReFacto® (novel procoagulant proteins)
       HFD - 7                            FDA Docket No.: 01E-0097
       5600 Fishers Lane (Rockwall II Rm. 1101)
       Rockville, MD 20857

       Attention: Beverly Friedman